## MERIDIAN LIGHT & RY. CO. v. CITY OF MERIDIAN et al.

(District Court, S. D. Mississippi, E. D.    May, 1920.)

### No. 19.

1. **Carriers ⊂⊃12(9)—Provision fixing fare in franchise held contract obligation.**

   A section in a street railroad franchise providing that, in consideration of the rights conveyed to the grantee, he should not charge more than 5 cents for a single ride, is a contractual obligation, and not merely a regulative provision.

2. **Carriers ⊂⊃12(9)—Street railroad company cannot attack contract provision fixing fares.**

   Though a city is without legislative power to contract with reference to street railroad fares, the street railroad company cannot, while claiming the benefits under the franchise, avoid a stipulation therein fixing the fare, which is not violative of any law or contrary to any public policy.

3. **Carriers ⊂⊃12(9)—Notwithstanding street railroad franchise contract, legislative power can fix different fare.**

   Where a city under its charter is without authority to contract with reference to a street railroad rate, which is an inherently legislative power, the state can fix a lower or higher fare than that fixed by street railroad franchise, if the facts justify and it is in the public interest to do so.

4. **Carriers ⊂⊃12(9)—Policy of insisting on franchise rates not question for courts.**

   The wisdom of insistence on a franchise contract fixing street railroad fares, which would bring disaster to the railroad company, is not a question for the courts to decide.

5. **Carriers ⊂⊃18(6)—Company held not threatened with irreparable injury, entitling it to injunction.**

   In a suit to enjoin the enforcement of a five-cent street railroad fare as provided by the franchise, where it appeared that the franchise imposed no penalty for charging a higher fare, and that the city had attempted to pass no ordinance imposing such penalty, nor had taken any other action to enforce the provision, no danger of irreparable injury to the company was shown.

6. **Carriers ⊂⊃18(6)—Commission cannot be enjoined from proceeding to fix fares pursuant to legislative authority.**

   A street railroad company, which was required to charge a 5-cent fare by a franchise provision, binding until set aside by state authority, cannot enjoin the state Railroad Commission from proceeding with reference to the subject-matter, over which it was expressly given authority to act by the Legislature, since it will not be presumed that the commission's orders will be arbitrary or oppressive.

In Equity. Suit by the Meridian Light & Railway Company against the City of Meridian and others. Bill and cross-bill dismissed.

Baskin & Wilbourn, of Meridian, Miss., and Armbrecht, Johnston & Mitchell, of Mobile, Ala., for plaintiff.

Amis & Dunn and V. W. Gilbert, all of Meridian, Miss., for defendants.

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

HOLMES, District Judge. The bill presents a meritorious question arising under the federal Constitution, sufficient to afford a basis of jurisdiction in this court.

It overwhelmingly appears that the electric street railway was built by W. R. Hall under authority of the franchise granted October 4, 1895. From whom he secured the means does not appear, but it is likely that the owners of the old horse car system gave him substantial aid. Hall and his assigns built and first operated the railway, and have extended and continued to operate it for a quarter of a century. During this time they have uniformly referred to the Hall franchise as the source of their authority, and have claimed and enjoyed the privileges and benefits which properly belonged to the owners thereof. The plaintiff is the assignee of this franchise, and time and time again has admitted that it was operating under it. Time and time again it has referred to this franchise, and relied upon it for rights and benefits. Even now and in this court it does not disclaim ownership thereof, or offer to surrender it, or to relinquish the rights and privileges thereby conferred. On the contrary, it retains and seeks to hold every property right incident to such ownership. It claims, however, that the 5-cent provision in section 15 is a rate regulation, and not a contract, and that the city was and is without legislative authority to regulate rates for street railways, but that, in any event, such provision is now confiscatory and void, because at the present time it is entirely inadequate to afford a fair return on the investment.

[1] If construed to be a contract, the plaintiff claims that the city under its charter was without legislative authority to contract with Hall and his assigns for a 5-cent fare for the period of 50 years for which the franchise ran. Section 15 is as follows:

"Sec. 15. That in consideration of the rights and privileges conveyed to said grantee, he shall in no case charge more than 5 cents for a single ride between terminal points on any division of the railway within the city limits. And the city shall have the right to use all poles of said grantee, without compensation, for the purpose of fire alarm, or police patrol system, so long as such use does not interfere with conducting the business of said grantee."

This is a contractual, and not merely a regulative, provision. Both by language and substance the obligation of a contract seems to be imposed. "In consideration of the rights and privileges" granted by one party the other shall not charge more than 5 cents for a single ride. In the case of Detroit v. Detroit Citizens' St. Ry. Co., 184 U. S. 368, 22 Sup. Ct. 410, 46 L. Ed. 592, the language used in an ordinance was:

"The rate of fare for any distance shall not exceed 5 cents in any one car," etc.

And the court, by Mr. Justice Peckham, said:

"Coming to a consideration of the effect of the language used, we think it amounted to a contract as to rates of fare."

And further (184 U. S. at page 389, 22 Sup. Ct. 418 [46 L. Ed. 592]) he said:

"Nor does the language of the ordinance, which provides that the rate of fare for one passenger shall not be more than 5 cents, give any right to the city to reduce it below the rate of 5 cents established by the company. It is a contract which gives the company the right to charge a rate of fare up to the sum of 5 cents for a single passenger, and leaves no power with the city to reduce it without the consent of the company."

[2] Granting, as the defendants do, that the city was without power to contract with reference to street railway rates, the plaintiff is in no position to raise this question. Having accepted the franchise and operated the street railway under it for nearly 25 years (half the life thereof), neither Hall nor his assigns, while still claiming all the property rights and valuable benefits accruing under it, will be heard to claim that a stipulation therein of something to be done by the grantee was without authority; the said stipulation not being violative of any law or contrary to any public policy. It will be noted that the stipulation claimed to be void is not some provision bartering away a public right or benefit, but is a stipulation which the grantee himself is to perform, entirely beneficial to the public. Hall was fully competent to bind himself not to charge more than 5 cents for a single ride. The power in the municipality to grant the franchise involved the power to grant it upon such terms and conditions and for such consideration as it saw fit, provided only, in so doing, it violated no law or public policy. There was no reason why the city could not sell the franchise to Hall for a fixed sum, or, if more in the public interest, stipulate for a maximum fare as part of the consideration; nothing forbade it doing so. Certainly it does not lie in the mouth of Hall or his assigns to complain of the city's lack of authority to stipulate for a benefit in the interest of the public, which benefit was to move from the grantee in the contract.

"That a railroad corporation may contract with a municipality or with a state to operate a railway at agreed rates of fare is unquestionable. And where the provisions of an accepted statute respecting rates to be charged for transportation are plain and unambiguous, and do not contravene public policy or positive rules of law, it is clear that a railroad company cannot avail of privileges which have been procured upon stipulated conditions and repudiate performance of the latter at will."

This is the language of Chief Justice White in Grand Rapids & Indiana Ry. Co. v. Osborn, 193 U. S. 29, 24 Sup. Ct. 314, 48 L. Ed. 598. Whether the plaintiff owns other franchises entitling it to occupy the public streets for the use of its railway, and may escape the burdens of section 15 by surrendering the Hall franchise, and may continue to operate its railway under its other franchises, is not involved here, because the plaintiff has not offered, and does not offer, to surrender the same, but is claiming all rights and benefits to which it is legally entitled thereunder.

[3] As the city confessedly was without authority to contract with reference to rates, an inherently legislative power, the state is free to insist upon a lower or a higher fare, if the facts justify and it is in the public interest to do so. Under the facts of this case, however, it is agreed that 5 cents is inadequate to afford the plaintiff a reasonably fair return on its investment. Therefore a lower fare is out of

the question, and the plaintiff in this proceeding is estopped by the provision of section 15 to charge a higher fare, unless this provision is waived or abrogated by the proper authorities.

[4] It may be highly in the public interest to waive the benefit of section 15 rather than bring disaster to the plaintiff by holding it rigidly thereto. But this is not a question for the courts to decide. As stated by Mr. Justice Day, in Columbus Ry. & Power Co. v. Columbus, 249 U. S. 399, 39 Sup. Ct. 349, 63 L. Ed. 669:

> "It may be, and, taking the allegations of the bill to be true, it undoubtedly is, a case of a hard bargain. But equity does not relieve from hard bargains simply because they are such. It may be that the efficiency of the service and fairness in dealing with the company which performs such important and necessary service ought to require an advance in rates. * * * But these and kindred considerations address themselves to the duly constituted authorities having control of the subject-matter."

[5] The state Railroad Commission has control of this subject-matter under chapter 135 of the Acts of 1914, empowering said commission to fix charges or rates for transportation of street railway lines, and the plaintiff may apply to said commission for an increase in rates, which may be granted, and under the facts of this case the commission would be justified in granting, notwithstanding the provisions of section 15. City of Benwood et al. v. Public Service Commission, 75 W. Va. 127, 83 S. E. 295, L. R. A. 1915C, 261; People v. Public Service Commission, 225 N. Y. 216, 121 N. E. 777; Pioneer Telephone & Telegraph Co. v. State, 33 Okl. 724, 127 Pac. 1073; State ex rel. Traction Co. v. Lewis (Ind.) 120 N. E. 129. The plaintiff has made no such application, but, on the other hand, is seeking to enjoin this rate-making body from taking any action thereon.

In these circumstances, when the city has done nothing but construe the franchise, and take the position that the railway company is estopped to charge more than 5 cents, and when (except by cross-bill herein) it has not sought or threatened, by any action, arbitrary or otherwise, to enforce its views, the company, by its bill against the city, its officers, attorneys, and certain citizens, seeks to have its rights under various franchises, including the one to Hall, adjudicated and upheld, except as to the rate provision in section 15, which it alleges to be null and void, and asks this court to so decree, and enjoin the defendants from enforcing any rate less than 7 cents, or from bringing any suits or instituting any criminal proceedings to punish the plaintiff for violating section 15.

Neither the Hall franchise nor the general ordinances (Dial's Code, No. 563, c. 14) provided a penalty for a violation of section 15. By merely charging more than 5 cents no crime was committed or penalty incurred. The city has not passed or threatened to pass any ordinance providing a penalty for a violation of the civil obligation resting upon the owners of the franchise; neither has it instituted or threatened any suit or criminal proceeding against the plaintiff. It has done nothing but express the view that the railway company is legally bound by the provisions of section 15. Certainly the plaintiff is in no such imminent danger of irreparable injury as to be entitled

to the aid and protection of the extraordinary equitable writ of injunction.

[6] By supplemental bill the state Railroad Commission is brought in and sought to be enjoined from proceeding with reference to the subject-matter. As stated, this body is expressly given authority by the Legislature to act in the premises, and the injunctive relief sought against it is premature, as there is nothing to show what action the commission intends to take, and this court will not presume that the orders of the commission will be arbitrary or oppressive.

Some of the defendants seek by cross-bill to enjoin an increase of street car fares over 5 cents for a single ride, but from the foregoing views it follows that both the original bill and the cross-bill should be dismissed, and the plaintiff taxed with the costs. A decree may be drawn accordingly.