## DETERMINED BY THE

# SUPREME COURT OF APPEALS

OF

# WEST VIRGINIA.

---

## CHARLESTON.

BLUEFIELD WATER WORKS & IMPROVEMENT CO. *v.* CITY OF
BLUEFIELD.

Submitted March 15, 1910. Decided March 7, 1911.

1. MUNICIPAL CORPORATIONS—*Power to Control Rates for Public
   Service.*

   In the absence of a delegation thereof by the legislature, ex-
   press or necessarily implied, a municipal corporation has no
   power to regulate or control rates for public service, such as
   the furnishing of water, gas or electricity, or the terms and
   conditions of contracts therefor, otherwise than by contract
   with the corporation or person rendering such service. (p. 8).

2. SAME—*Regulation of Rates for Public Service—Enforcement.*

   Though such regulation is usually in the form of an ordi-
   nance, it is nevertheless contractual or administrative in char-
   acter, and not enforceable by criminal penalties, except in those
   instances in which the legislature has delegated to the munici-
   pal corporation power and authority to enforce compliance
   therewith in that way. (p. 9).

3. WATERS AND WATER COURSES—*Regulation of Rates for Public
   Service—Enforcement.*

   Authority in a municipal charter to pass all ordinances neces-
   sary to the execution of the powers vested in the city and such
   as may be deemed necessary and proper to conserve the health,
   comfort, happiness and convenience of its inhabitants, and en-
   force the same by reasonable fines and penalties, does not in-

   69 W. Va.

clude power to regulate or control such public service rates and conditions otherwise than by contract, nor to enforce regulations so made by fines or criminal penalties.   (p. 9).

4.   INJUNCTION—*Enforcement of Contractual Regulation of Public Service by Criminal Proceedings.*

Attempted enforcement of contractual regulations of public service, by criminal proceedings under an ordinance of a city, not authorized by legislative enactment to adopt such means of enforcement, may be enjoined.   (p. 5).

(BRANNON, JUDGE, absent.)

Appeal from Circuit Court, Mercer County.

Bill by the Bluefield Waterworks & Improvement Company and others against the City of Bluefield and others.   Decree of dismissal, and plaintiffs appeal.

*Reversed and Rendered.*

*A. W. Reynolds* and *Sanders & Crockett,* for appellants.

*D. E. French* and *Ritz & Ritz,* for appellees.

POFFENBARGER, JUDGE:

The questions in this case arise out of the action of the circuit court of Mercer county, upon a bill in equity, filed by the Bluefield Water Works & Improvement Company and William McCarthy, agent of said company, to enjoin the City of Bluefield, its officers, agents and attorneys from enforcing, by criminal proceedings, a certain ordinance of the city, affecting property rights of said company and the conduct of its business.   A preliminary injunction was awarded, and, later, upon a full hearing of the cause, the court dissolved the injunction and dismissed the bill.

The City of Bluefield seems to have been originally incorporated under chapter 47 of the Code.   The Legislature, at the session of 1897, granted it a special charter, found in chapter 99 of the acts of that session.   This was amended and re-enacted by chapter 3 of the Acts of 1905.   Certain sections were again amended by chapter 2 of the Acts of 1907, and the entire charter was amended and re-enacted by chapter 1 of the Acts of 1909. The ordinance here complained of was passed on the 24th day of August, 1908, and the franchise of the Water Works Company

is found in ordinances passed on the 20th day of January, 1891, and October 3, 1892.  The franchise ordinance is very informal and incomplete.  As first granted, it conferred upon the water company the right to construct and forever maintain its water works, pipes and mains through, beneath, over, across and along any and all of the streets, alleys and public grounds of the city, for the purpose of supplying and furnishing water to the city and the citizens and the property owners thereof for domestic and manufacturing purposes, and for all other purposes for which it should be desirable, for rent, lease, hire, sale and reward, upon any terms and conditions that, from time to time, might be agreed upon between the company, its successors and assigns, and the city and other patrons and customers.  This ordinance did not affirmatively require the water works company to furnish water nor fix any maximum rate.  Deeming it not sufficiently explicit and obligatory in these respects, the council amended it on the 3rd day of October, 1892, by the addition of four clauses, by the first and second of which it was made obligatory upon the water works company to furnish water to the town and the general public and all persons and corporations desiring it, to the extent of the company's ability so to do, at prices to be agreed on by it and the purchasers of water, provided the rate should not exceed the then existing rate for private consumers, whatever that means, and twenty-five cents per thousand gallons for consumers by meter.  The third additional clause provided that the company should conduct its business of supplying the public with water in accordance with the ordinances of the town, theretofore or to be thereafter enacted so long as said company should operate its said business under the authority conferred on it by the ordinances of the town, except that the maximum rate to be charged for water as fixed by the ordinance, should not be changed without the consent of the company.  The fourth clause approved and confirmed the powers conferred upon the company by the former ordinance, that of January 20, 1891. Under its franchise, as evidenced by these two ordinances, the water works company continued its business without any attempt on the part of the city to regulate or control the same, in respect to its contracts with citizens, from 1892 until 1908. Some of the rules and forms of contract adopted and enforced

by it seem to have caused dissatisfaction and complaint. It required owners of property into which it carried water, to agree to pay the water rents, not only for water consumed by themselves, but also for that furnished to their tenants. Another rule required payment of three months' flat rate water rent in advance. Another required the customer or patron to bear the cost of putting in the pipes or fixtures from the property line to a certain point in the street. Another required any person causing the main to be tapped by a plumber not employed by the company itself, to give bond for any damages that might result from negligent or unskilful work, even though such plumber had a license from the city. The public dissatisfaction with these rules and regulations and others which need not be mentioned found its way into the city council, and, on the 24th day of August, 1908, that body passed an ordinance purporting to be a general rule or law for the government or regulation of persons, firms or corporations furnishing water in the city. It consists of two sections, the first of which lays down ten rules, only two of which are involved here, those designated "c" and "d". They read as follows: "(c) The water shall not be cut off from any consumer thereof, so long as the same is used in a proper and legitimate manner, and the water rents are paid, or tender for same has been made by the owner or occupant of the property to which such water is furnished. (d) Water rent shall not be required to be paid for more than one month in advance when charged on flat rate. When water is furnished through meter, the rent for same shall be due on the first of the month, immediately following the month in which the service was rendered, but the water shall not be cut off from any consumer on account of the non-payment of water rent, until a bill has been rendered therefor and the party against whom same is charged given an opportunity to pay for same." The second section is a penal clause providing for the enforcement of the regulations prescribed by section 1, and reads as follows: "Any person, firm or corporation, or the agent, representative or employee of any such person, firm or corporation violating any of the provisions of this ordinance shall, upon conviction thereof, be fined not less than one nor more than one hundred dollars for each offense."

Florence A. Harstock and H. J. Harstock had, on April 19, 1906, entered into a contract with the company for water to be furnished in certain property owned by them, and thereby agreed to pay all water bills at the company's office as they should become due, against both themselves and their tenants, according to the rules, regulations and rates as they then were or should thereafter be, and this contract was to remain in force until canceled by notice. The Harstocks neglected to pay some of the water rents and, while these rents were in arrears, J. L. Peters became their tenant of the property and demanded service from the water company. This it refused to furnish until the arrearages of rent should be paid and also until Peters would pay three months' water rent in advance. He tendered rent in advance for one month. William McCarthy, superintendent of the water works company, who, on its behalf, had declined to furnish water to Peters, was arrested and taken before the recorder of the city, charged with violation of the ordinance. He denied the validity of the ordinance, but was convicted and fined one hundred dollars, which he was required to pay as a condition of his appeal to the criminal court of the county. He was further informed that for each day he failed and refused to furnish the water, he would be fined one hundred dollars.

If the ordinance, for the enforcement of which the proceedings against the superintendent of the water works company were instituted, is invalid, in so far as it attempts to provide a remedy by fine, there can be no doubt about the jurisdiction by injunction. The object and direct effect of the criminal proceedings is to control the water works company in respect to the use of its property, and works a restraint thereon, affecting its use and enjoyment. The jurisdiction does not depend solely upon the invalidity of the ordinance. Two elements are necessary, invalidity of the proceeding and invasion by it of a personal or property right. *Coal & Coke Ry. Co.* v. *Conley,* 67 W. Va. 129, 67 S. E. 613; *State* v. *Ehrlick,* 65 W. Va. 700; *Fellows* v. *Charleston,* 62 W. Va. 665; *Block* v. *Crocket,* 61 W. Va. 421; *Florida* v. *Fleming,* 58 W. Va. 669. If the ordinance is invalid to the extent aforesaid, both of these elements are present in this case.

The regulation of rates for public service belongs to the

police power of the state.  *Coal & Coke Ry. Co.* v. *Conley,* cited. The state has very ample powers for the control and government of corporations and the transaction of their business, and may no doubt ordain and enforce such regulative measures as are embodied in the ordinance complained of, and enforce compliance therewith by making failure to observe them a criminal offense, punishable by fine.  But municipal corporations do not possess all the police powers of the state.  They have only such portions thereof as are granted to them by the legislature in express terms or by necessary implication.  *Judy* v. *Lashley,* 50 W. Va. 628.  The City of Bluefield, therefore, to maintain its position, must find warrant for the power it has assumed to exercise in some act of the legislature.  Its powers respecting gas, electric light and water works companies, as found in section 28 of chapter 47 of the Code are "to erect, or authorize or prohibit the erection of gas works, electric light works, or water works in the city, town or village; to prevent injury to or pollution of the same, or to the water or healthfulness thereof."  As we have said, the city was originally incorporated under that chapter. Its special charter, granted by the Act of 1897, contained only this provision: "To erect water works and provide a water supply for said city, or to authorize or prohibit the erection of gas works in or near the city, to prevent injury to, and provide for the protection of the same; to provide for the purity of the water and healthfulness of the city."  If the amended charter of 1905 contains any provision relating, in express terms, to the subject of water works, it is no broader than that of the charter of 1897.  The only provisions relied upon as conferring the authority claimed are sections 24, 44 and 87.  These are all very general and signify no legislative intent to vest power in the city to regulate rates or prescribe regulations for the transaction of business by corporations or between citizens. Section 24 gives authority to pass all ordinances necessary to carry into effect any power granted to or vested in the city and to enforce them by reasonable fines and penalties.  Section 44 gives authority to pass and enforce such rules as may be deemed necessary and proper to preserve the health of the inhabitants and pass such ordinances as the comfort, health, happiness and convenience of the inhabitants of the city shall require.  Section

87 reserves to the city all powers conferred upon it or the council or any of its officers by general law, not inconsistent with the powers conferred by that act. These are such provisions as are generally found in municipal charters. If they conferred the authority claimed here, almost every municipal corporation in this state and every other state would have such power. These provisions manifestly do no more than vest power in the council to carry into execution the limited police powers therein granted and those granted by other parts of the charter. Power to conserve the health, comfort, happiness and convenience of the inhabitants of a city, as defined by the courts, does not include power to determine in what manner one citizen may deal with another or on what terms they shall contract for particular services. This delegation of legislative power is entirely too general and indefinite to include matters of that kind. A general welfare clause does not extend beyond the police powers ordinarily vested in municipal corporations. Tiedeman Munic. Cor., sec. 135.

The water works company derives its power to do business as a corporate entity from the state, not from the City of Bluefield. Its charter was obtained under the general law authorizing it to construct its works and lay its pipe lines and mains to supply the city and its inhabitants with water for all proper purposes. Its power to do business and make and enforce contracts is as ample and full as that of an individual, and is subject to regulation in the exercise thereof only by the state itself, or under authority delegated by the state. Of course, its operations within a city are subject to the police power of the city, that is, such police power as has been delegated by the legislature, but nothing more. The legislature has not delegated to the City of Bluefield any authority to regulate or control it in its business or operations, except in so far as its operations may conflict with the delegated police powers of the city, its control of its streets; power to keep them clean, in repair and free from obstruction; its power to give or withhold permission to any corporation or person to permanently occupy them for public purposes; its power to prescribe conditions upon which they may be so occupied for such purposes; its power to require cleanliness and purity throughout the city for the comfort

and health of the people; and other similar powers. This corporation is·subject to the exercise of all of these city powers just as other corporations, and all inhabitants are, and the city itself cannot surrender them, nor barter them away, nor bind itself not to exercise them.

This corporation, chartered by the state, could not obtain the right to occupy the streets of the city or do business therein under its state franchise, without the consent of the city. In order to obtain that consent, it was bound to submit itself to such regulatory conditions as the city saw fit to impose. When these conditions were imposed and accepted by the company, the prescription and acceptance thereof formed a contract between the city and the company. *Railroad Co.* v. *Triadelphia,* 58 W. Va. 487; *Clarksburg E. L. Co.* v. *Clarksburg,* 47 W. Va. 739. The power thus conferred upon the company to occupy the streets and do business is not revocable, except for breach of the contract in some form by the company. It is a contract fully protected by the constitutional guaranties, and immune from destruction or impairment by the city. The contractual relation extends not only to the immediate parties, the city and the company, but also to the inhabitants of the city. It confers upon them rights which the company cannot withhold nor deny, and also upon the company rights which the city cannot destroy The rates prescribed by the contract, if any, and the remedies for the enforcement thereof, left in the hands of the company, such as rules and regulations, form parts of the contract. *Detroit* v. *Railway Co.,* 184 U. S. 368; *Water Co.* v. *Knoxville,* 189 U. S. 434; *Cleveland* v. *Railway Co.,* 201 U. S. 529. Of course the rates and method of doing business are subject to regulation to some extent by the state, under its general police power, but not by the city, the state not having delegated to it power to make such regulations. In its use of the streets and its general conduct it is subject to such regulations as the city may make under the police powers delegated to it, but these do not extend to rates and terms of contract. The function performed by a municipal corporation in securing rates and guaranties of modes of transacting business between itself and public utility corporations, seems to rest upon its contractual, not its legislative, capacity. Mr. Tiedeman, in his valuable work

on Municipal Corporations, at section 163, refers the municipal capacity to obtain and secure for the city and its inhabitants such rights as are involved here to its contractual powers. The function may be, to some extent, legislative, but it seems to be more nearly administrative. Being administrative, it is exercised in connection with the police power, which is legislative, so that the two functions are not always readily distinguishable, in respect to the basis of authority. The one may be easily confounded with the other. We think the city's power of regulation as to the rates to be charged and the forms of contract between the company and its patrons, both public and private, rests solely upon its right to make contracts and not upon delegated legislative power. Its administrative powers, under its right to make such contracts, may be exercised in the form of ordinances, but its right to pass ordinances upon the subject does not include the right to enforce its contracts, either in favor of itself or the inhabitants, by the imposition of criminal penalties. It can enforce its contracts only in those modes allowed to individuals and private corporations. Not having the power to make violations of contracts criminal, it could not reserve any such power to itself in the ordinances by which it granted the franchise. Nor could the water works company, having no power to add anything to the capacity of the city, confer upon it such right or power. Two private persons cannot, by their contract, confer upon each other right to inflict fines and imprisonment for violation of their contract. This power, if it exists at all, is vested in the legislature of the state and has not been delegated to the City of Bluefield. It could not be obtained from any other source. Hence, it is plain that the city does not possess it.

It is said that this Court, in *Gas Company* v. *Lowe and Butler,* 52 W. Va. 662, 670, has recognized and asserted power in municipal corporations of this state to regulate rates. The question was not directly involved in that case. The inquiry there was the right of a gas company, having a city franchise for furnishing gas to the inhabitants of the city, to exercise the power of eminent domain. It became necessary to say whether or not the land sought to be taken was required for a public purpose. In the discussion of that question, it was said

69 W. Va.

that such company is bound to furnish gas to every inhabitant of the city or town who applies therefor and complies with the regulations prescribed by the ordinances of the town, or fixed by contract between the council and company, and also that the transportation and use of gas seems to be susceptible of but little regulation beyond fixing the maximum price to the consumer by municipal corporations to which the legislature has qualifiedly delegated powers of local government. This was followed by the observation that they have ample authority to regulate rates, as well as to impose terms and conditions such as will insure safety of the lives and property of citizens in the use of gas. This language may go somewhat beyond the position taken here, but the source of power to regulate and the mode of regulation was not the subject of inquiry in that case. It was only necessary to say that the city had power to secure to the inhabitants the right to obtain the gas from the company and to provide against danger and injury to persons and property in the conduct of the business of the gas company. Whether this power was legislative, administrative or contractual was wholly unimportant in that case. Hence what is said in the opinion upon the subject is not to be regarded as a deliberate judgment or conclusion. Capacity derived from either source sufficed.

Our conclusion, therefore, is that section 2 of the ordinance, adopted by the City of Bluefield, August 24, 1908, is void and the proceedings on the part of the city under it wholly without legal sanction.

Whether the regulations prescribed in section 1 are valid as modifications of the franchise, under power reserved in the amended ordinance of October 3, 1892, it is unnecessary to determine. The city or any citizen may test that question by any proper proceeding in a judicial forum having jurisdiction, upon an application for the appropriate remedy to enforce the right alleged to have been conferred or secured by these regulations. Though we have referred the power of the city to make such regulations to its contractual rights and capacity, the water works company is a public service corporation and the rights, so secured to it and the inhabitants, may rest upon a legal foundation, giving a remedy by *mandamus*. We deem it proper to make this observation, lest what has been said here

may be regarded as precluding that remedy. As a public service corporation, the company may be under a legal duty to the city and its inhabitants, though the rights were fixed and secured by virtue of the city's contractual powers. In other words, a legal duty may rest upon the water works company, though the rates were secured by virtue of the contractual powers of the city. At any rate, sections 28c. I. and 28c. II. of chapter 47 of the Code of 1906, gives a remedy, and this signifies legislative intent to withhold the drastic one adopted by the city.

For the reasons stated, the decree complained of will be reversed, the demurrer and the motion to dissolve the injunction overruled, and the injunction reinstated, in so far as it inhibits proceedings under said section 2 of the ordinance of August 24, 1908, and perpetuated; but, in so far as it relates to the other provisions of said ordinance, the injunction was properly dissolved and, to that extent, the decree of dissolution will be affirmed.                    *Reversed and Rendered.*