# CHARLESTON

CITY OF BENWOOD *et al.* v. PUBLIC SERVICE COMMISSION.

Submitted September 22, 1914.    Decided October 13, 1914.

1. CORPORATIONS—*Regulation of*—*Public Service Commission*—*Powers.*

   The Public Service Commission has power to change any intrastate rate for service rendered the public, when to do so will conflict with no paramount law or constitutional inhibition.  (p. 129).

2. SAME—*Municipal Corporations*—*Delegation of Legislative Power*— *Regulation of Corporations*—*Presumption.*

   The rate-making power is inherent in and belongs primarily to the legislature.  The presumption is against exclusive delegation of the power.  Unless there has been such delegation by clear and unmistakable terms, the power remains in the legislature, which can exercise the same when it sees fit.  (p. 130).

3. WATERS AND WATER COURSES—*Rate-Fixing Power—Delegation.*

A grant of power by the legislature to a municipal corporation "to erect, or authorize or prohibit the erection of   *   *   *   * water works" does not vest the municipal corporation with power to fix water rates by franchise or agreement beyond the control of the legislature. (p. 131).

4. MUNICIPAL CORPORATIONS—*Rate-Fixing Power—Delegation.*

The general provision in a municipal charter authorizing the municipal corporation to "contract and be contracted with" does not delegate beyond the State's control the power to fix public service rates. (p. 132).

5. SAME—*Rate-Fixing Power—Legislative Control.*

Impliedly from general powers, a municipal corporation may have the power to contract in the matter of public service rates, as long as the legislature does not exercise its reserved power in that particular, but any contract so made is only permissive and is subject to future legislative action. (p. 132).

6. SAME—*Public Service Rates—Control by Public Service Commission.*

The Public Service Commission may change a public service rate which was fixed for a municipality by franchise ordinance prior to the enactment of the law creating the commission, where authority to fix such rate was not expressly delegated to the municipal corporation by the legislature. (p. 132).

7. CONSTITUTIONAL LAW—*Impairment of Contracts—Changes of Public Service Rates.*

Where, by franchise or ordinance, public service rates within a municipality have been fixed and accepted as between a public service corporation and the public, without express delegation of power in such particular by the legislature to the municipality, a change of the rates by the Public Service Commission does not impair the obligation of a contract. (p. 133).

Proceedings by the City of Benwood and others to secure suspension of an order of the Public Service Commission.

*Order of Suspension Refused.*

*T. S. Riley* and *Martin Brown,* for petitioners .

*J. W. Ritz, A. A. Lilly,* Attorney General, and *Frank Lively,* Assistant Attorney General, for respondents.

ROBINSON, JUDGE:

The Benwood and McMechen Consolidated Water Company made application to the Public Service Commission for a

change in rates for water furnished by the company to the public in the City of Benwood. The city and certain of its citizens appeared to the proceeding before the commission and resisted the application, claiming that the commission was without power to change the rates, since, at the time of the city's grant of the franchise under which the company operated the rates for water to be furnished under the franchise were fixed and contracted for therein. The commission overruled this ground of objection and ordered a hearing on the merits of the application. Thereupon, the city and the citizens, further insisting upon their objection, brought the proceeding into this court, pursuant to the process prescribed in the act creating the Public Service Commission.

The case presents squarely the question: May the Public Service Commission alter a rate that was fixed by franchise ordinance prior to the enactment of the law by which the commission was created and given powers? If it may not, summary prohibition, under the original jurisdiction powers of this court, will lie in the premises. *United Fuel Gas Co. v. Public Service Commission*, 80 S. E. 931.

That the Public Service Commission may change any intrastate rate for service rendered to the public, when to do so will conflict with no paramount law or constitutional inhibition, we have no doubt. The very spirit and purpose of the act by which the commission is established and performs its functions, affirms that it may do so. The broad and general powers prescribed for it by the statute include that of general rate regulation. A reading of the act fully discloses that the Legislature meant to delegate to the Public Service Commission the administrative supervision and regulation of all service rendered to the public throughout the whole of the State. That it did this for the general welfare is most apparent. Modern conditions giving rise to such legislation in the interest of all, are so well known as to need no recounting here. Moreover, the language of the act is so plain that all doubt as to the power of the commission for general and statewide administration of rates for service rendered by corporations or individuals to the public, must be eliminated. The act does not exclude, but expressly includes, the supervision

and regulation of service to the public in municipalities. The following provisions are here pertinent:

"Every person, firm or corporation engaged in a public service business in this state shall establish and maintain adequate and suitable facilities and shall perform such service in respect thereto as shall be reasonable, safe and sufficient, and in all respects just and fair. All charges, tolls, fares and rates shall be just and reasonable." Acts 1913, ch. 9, sec. 4.

"The commission is hereby given the power to investigate all methods and practices of public service corporations, and to require them to conform to the laws of the state. * * * The commission may change any intrastate rate, charge or toll which is unjust or unreasonable and may prescribe such rate, charge or toll as would be just and reasonable, and change or prohibit any practice, device or method of service in order to prevent undue discrimination or favoritism as between persons, localities or classes of freight." Acts 1913, ch. 9, sec. 5.

"The commission shall have general supervision of all persons, firms or corporations having authority under any charter, or franchise of any city, town or municipality, county court, or tribunal in lieu thereof, to lay down and maintain wires, pipes, conduits, ducts or other fixtures in, over or under streets, highways or public places for the purpose of furnishing and distributing gas, or for furnishing and transmitting electricity for light, heat or power, or maintaining underground conduits, or ducts for electrical conductors, or for telegraph or telephone purposes, and for the purpose of furnishing water either for domestic or power purposes and of oil and gas pipe lines." Acts 1913, ch. 9, sec. 10.

Though the grant and acceptance of the franchise wherein certain rates were fixed, created a contract between the water company and the City of Benwood, the rates thereby fixed are nevertheless cognizable for revision by the Public Service Commission under the broad powers delegated thereto, unless prior to the delegation of those powers the Legislature had expressly delegated power to the City of Benwood which authorized the city to contract inviolably for the rates mentioned in the franchise for the period stated therein. Rate-

making is a legislative act. It is inherent in and belongs primarily to the legislature. The rate-making power is a power of government—a police power of the state. The City of Benwood, at the time of the granting of the franchise, had no rate-making power that could bind the State, if the Legislature of the sovereign State had not theretofore delegated the same to the city. And if such delegation or grant of rate-making power was made to the city prior to the delegation of general and state-wide powers in the same particular by the Legislature to the Public Service Commission, the language relied upon as evidence of such delegation or grant to the city must be clear and express. The presumption is against exclusive delegation of the legislature's sovereign rate-making power to a municipality. Unless there has been such delegation by clear and express terms, the power is reserved in the state, which can exercise it at such times and to such extent as may be found advisable. *Improvement Co.* v. *Bluefield,* 69 W. Va. 1; *Judy* v. *Lashly,* 50 W. Va. 628; *State ex rel. Webster* v. *Superior Court,* 67 Wash. 37; *Milwaukee E. R. & L. Co.* v. *Railroad Commission,* 153 Wis. 592; *Home Telephone & Telegraph Co.* v. *Los Angeles,* 211 U. S. 265.

The franchise was granted by an ordinance of the City of Benwood, passed in October, 1897. The charter of the city as it existed at the time is found in Acts 1895, ch. 63. That charter, we find, delegated no express power to the city in relation to rate-making, either as to water or any other thing to be furnished to the public. It did grant the power "to erect, or authorize or prohibit the erection of, gas works, electric light works, or water works, in the city." But this general grant does not give power to fix rates by franchise or agreement beyond the control of the Legislature. For a municipal corporation to claim the power to fix rates inviolably, it must show clear and express delegation of the same to it from the legislature. The Supreme Court of the United State, in *Home Telephone & Telegraph Co.* v. *Los Angeles, supra,* said: It has been settled by this court that the State may authorize one of its municipal corporations to establish by an inviolable contract the rates to be charged by a public service corporation (or natural person) for a definite

term, not grossly unreasonable in point of time, and that the effect of such a contract is to suspend, during the life of the contract, the governmental power of fixing and regulating the rates. * * * But for the very reason that such a contract has the effect of extinguishing *pro tanto* an undoubted power of government, both its existence and the authority to make it must clearly and unmistakably appear, and all doubts must be resolved in favor of the continuance of the power.''

But the City of Benwood says it had the right given it by the legislative charter to ''contract and be contracted with.'' True, this general provision usually found in municipal charters is in the charter of the City of Benwood. But that provision can not be construed as delegating beyond legislative control the power to fix public service rates. For as we have seen, the presumption is against such delegation of the power. The delegation ''must clearly and unmistakably appear.'' It does not so appear in the general provision merely to contract and be contracted with.

We do not say that the contract as to rates contained in the franchise was not good as between the water company and the city as long as the Legislature did not exercise its superior and supreme power over the subject of the rates. From the general powers to establish water works and to contract and be contracted with, impliedly the city had the power to contract in the matter of rates for water furnished the public as long as the Legislature did not exercise its reserved power in that particular. But that implied power was inferior to the reserved power. It was subject to the right of the Legislature to prescribe different rates at any time. The Legislature, not having expressly delegated to the city power by which it could inviolably agree as to the rates, could exercise power in that particular regardless of the franchise provisions. It had withheld supreme power unto itself. Neither by the charter nor by subsequent legislation did it delegate to the City of Benwood authority to agree unalterably as to the rates for a stipulated period.

The water company and the city in the making of the so-called franchise contract were bound by cognizance of the fact that their dealings were subject to future exercise of the

Legislature's power over rates for water furnished the general public in the locality. Hence the franchise was made subject to what the Legislature might thereafter do as to the rates dealt with by the franchise. It was subject to the Legislature's making use of the inherent power, reserved and not exclusively delegated to the City of Benwood, to supervise all public service charges. And when the Legislature in its wisdom saw fit to exercise its reserved power of supervision over the matter of public service rates by the creation of the Public Service Commission and the delegation of the power to the commission in that behalf, the rates mentioned in the franchise became subject to supervision and regulation by the Public Service Commission. The Legislature had withheld the exercise of its power over those rates until that time. It could use the power when it pleased. No length of nonuser affected the State's right thereto. *Railroad Co.* v. *Iowa,* 94 U. S. 155. What the Supreme Court of Wisconsin said in a similar instance is here applicable: "The contract remained valid between the parties to it until such time as the state saw fit to exercise its paramount authority, and no longer. To this extent, and to this extent only, is the contract before us a valid subsisting obligation." *Manitowoc* v. *Manitowoc and Northern Traction Co.,* 145 Wis. 13.

Yet it is most earnestly insisted on behalf of the city that the contract is inviolable, and that to uphold the powers of the Public Service Commission to the extent of allowing the commission to change the rates would in effect abrogate the contract, contrary to constitutional inhibitions against the enactment of any law impairing the obligation of a contract. In the light of what we have said, this position can not be sustained. Nothing that was binding in the contract will be impaired. By it the State was not bound. The contract related to a subject matter belonging to the State. The State had not given the city the power or agency to contract away its right thereto for a given time. The contract having been entered into without express legislative authority, was permissive only. It was conditioned upon the exercise of the sovereign power over the subject matter. All this the parties to the contract were bound to know when they entered into

it.   There can be no impairment of the contract by the act of the State in claiming its own, when it is not bound by the contract.   The supervision and regulation of the rates by the State, through the Public Service Commission, does not take from either of the parties to the contract any right which they had thereunder.   Such supervision and regulation does not therefore impair the obligation of a contract.   *Home Telephone and Telegraph Co.* v. *Los Angeles, supra; State ex rel. Webster* v. *Superior Court, supra; Knoxville Water Co.* v. *Knoxville,* 189 U. S. 434; *Railroad Co.* v. *Mottley,* 219 U. S. 467; *Wyandotte County Gas Co.* v. *Kansas,* 231 U. S. 622; *Dawson* v. *Dawson Telephone Co.,* 137 Ga. 62.

Perceiving that the Public Service Commission is acting within its powers, we decline to interfere.   The petition asking for relief here will be dismissed.

*Order of Suspension Refused.*