of privilege be stricken and that "the court proceed to hear and determine the subject matter of this suit."

The judge, having heard and considered said motion, entered an order, dated October 28, 1933, denying said motion to strike, which contains as his reason therefor the following statement:.

"This order is made for the reason that I am of the opinion that this is the kind and nature of a proceeding which is subject to the general venue laws, and therefore such plea was and is properly filed and should be heard and determined in the manner provided for by law in disposing of pleas of privilege.

"I therefore refuse to hear and determine this cause until such plea of privilege has been regularly disposed of."

The above proceedings occurred during vacation. The act creating the One Hundred Nineteenth judicial district provides for a term of court, of ten weeks, in Tom Green county, to begin on the thirteenth Monday after the first Monday in January of each year. Acts 42d Leg. (1931) c. 367.

Relator states that this date for the current year is April 2, 1934; respondent challenges this statement, and asserts that such date is February 26, 1934, which is an error, as a simple calculation demonstrates. However, this is immaterial for the purposes of this opinion.

It seems that the district judge is of opinion that articles 2007 and 2008, Rev. Stat. 1925, should control his action as to hearing the case upon the plea of privilege; and therefore, such plea having been filed, he must wait until at least five days after appearance day of his next term to give an opportunity for a controverting affidavit to be filed, service thereof at least ten days before a hearing, and judgment rendered thereon, before he can pass upon the merits.

In Burckhalter v. Conyer (Tex. Com. App.) 9 S.W.(2d) 1029, the court said: "The writ of habeas corpus is a writ of right, designed to protect the individual against any character of illegal restraint. The efficacy of this writ lies in the prompt and speedy hearing given an applicant seeking the protection of its beneficent provisions. If the hearing under such writ can be delayed by the demand for a jury, its effectiveness would be largely impaired."

So here the writ was made returnable to a day certain, and the court should have then disposed of the matter. The interested parties were before the court; if the court thought the plea of privilege well taken, he should have rendered judgment accordingly; if he thought otherwise, he should have heard the controversy on its merits, but a disposition of the matter should then have been made.

We recommend that the writ of mandamus issue requiring respondent to hear and determine this cause, in vacation, and at his earliest convenience.

CURETON, Chief Justice.

The opinion of the Commission of Appeals is adopted, and mandamus awarded.

**TEXAS–LOUISIANA POWER CO. et al. v. CITY OF FARMERSVILLE.**

No. 1509—1721—6440.

Commission of Appeals of Texas, Sections A and B.

Dec. 30, 1933.

W. R. & W. P. Abernathy, of McKinney, Bennett L. Smith, of Fort Worth, and Black & Graves, of Austin, for plaintiffs in error.

Touchstone, Wight, Gormley & Price and J. W. Gormley, all of Dallas, for defendant in error.

SHARP, Judge.

This suit involves a dispute between the city of Farmersville, a municipal corporation, organized under the general laws of Texas, and the Texas-Louisiana Power Company, with respect to rates to be charged consumers by virtue of certain ordinances passed by the city of Farmersville. For the sake of brevity, we will refer to the city of Farmersville as the city and the Texas-Louisiana Power Company as the power company. It appears that on May 5, 1930, the city adopted two ordinances, Nos. 122 and 123, which had for their object the regulation of public utilities and the fixing of rates to be charged consumers. These ordinances were enacted by virtue of article 1119, Revised Civil Statutes 1925, as it then existed. The Forty-Second Legislature amended the article by an act approved May 26, 1931 (see Session Acts, c. 226, p. 380, Vernon's Ann. Civ. St. art. 1119), whereby the amended act authorizes cities and towns of over 500 population instead of over 2,000, as originally provided, to regulate and prescribe rates to be charged by public utilities; and further providing that no rates should be fixed that would yield more than 10 per cent. per annum, in lieu of the former provision of not less than 10 per cent. per annum, on the actual costs of the physical properties, equipment, and betterments.

After the amendatory act became effective, the city, on September 1, 1931, adopted Ordinances Nos. 126 and 127, which are in all material respects the same as Ordinances Nos. 122 and 123, in which rates for its own observance were prescribed, as well as for the observance of the power company, being the same, in effect, voluntarily charged by the power company. The power company, refusing to abide by the schedule of rates prescribed by the ordinances, promulgated, and insists upon maintaining, the schedule of rates much lower than that fixed by the ordinances.

The case was tried without a jury on the city's amended petition. The trial court sustained a special exception to the amended petition setting up the rate and regulatory ordinances adopted in September, 1931, by virtue of the amended article, on the ground that the amendment was unconstitutional because of the defect in its caption, and, after hearing the evidence, rendered judgment in

favor of the power company. An appeal was made to the Court of Civil Appeals at Dallas, and the judgment of the trial court was set aside and judgment rendered in favor of the city, upholding the validity of article 1119 as amended, and sustained the rates fixed by the ordinance. 55 S.W.(2d) 195. A writ of error brings the cause here.

■ The first question presented is that the Court of Civil Appeals erred in not holding unconstitutional and void the entire amendment to article 1119 adopted by the Forty-Second Legislature, 1931 (Session Acts, pp. 380 and 381 [Vernon's Ann. Civ. St. art. 1119]). The court, having correctly held that the second sentence of said act was not supported by the caption of the bill, erred in failing to hold that this rendered void the entire act.

The effect of the original article 1119 was to authorize cities and towns having a population of more than 2,000 to regulate rates to be charged by public utilities to consumers, and that no rate should be prescribed which would yield less than 10 per cent. per annum net on the actual costs of the physical properties, equipment, and betterments. In 1931 the Forty-Second Legislature undertook to amend article 1119 in two respects, as will hereafter appear. The vital parts of the act read as follows:

"An act to amend Article 1119 of the Revised Civil Statutes of 1925, so as to change the population of towns coming within its scope from two thousand (2,000) to five hundred (500); and declaring an emergency.

"Section 1. That Article 1119 of the Revised Civil Statutes of 1925, be amended so as to hereafter read as follows:

"Article 1119. The governing body of all cities and towns in this State of over five hundred (500) population, incorporated under the General Laws thereof, shall have the power to regulate, by ordinance, the rates and compensation to be charged by all water, gas, telephone companies, light and sewer companies, corporations or persons using the streets and public grounds of said city or town, and engaged in furnishing water, gas, light or sewerage service to the public, and also to prescribe rules and regulations under which such commodities shall be furnished, and service rendered, and to fix penalties to enforce such charges, rules and regulations. The governing body shall not prescribe any rate or compensation which will yield more than ten (10%) per cent per annum net on the actual costs of the physical properties, equipment and betterments."

It plainly appears that the amendment had two objects in view, first, to substitute cities or towns having over 500 in population for cities and towns having more than 2,000 in population as in the original act; and, second, to change the minimum rate of 10 per cent. on actual costs of the physical properties, etc., to a maximum rate of 10 per cent. calculated on the same basis. The caption of the amended act refers only to the first object stated, and makes no reference whatever to the second object. All laws passed by the Legislature of this state originate in bills upon which must appear a caption or title. Section 35 of article 3 of the Constitution of this state provides: "No bill * * * shall contain more than one subject, which shall be expressed in its title." The object of this provision of the Constitution is to compel the caption to contain the subjects embraced within the bill. This prevents the caption concealing the true purpose of the statute and avoids deception in its adoption. Section 36 of article 3 of the Constitution reads: "No law shall be revived or amended by reference to its title; but in such case the act revived, or the section or sections amended, shall be re-enacted and published at length."

■ ■ The amended act cannot be sustained on the ground that, if that part of the act which prescribes that no rate shall be fixed "which will yield more than ten per cent per annum net on the actual costs of physical properties," etc., should not be upheld because not contained in the caption, the remaining part of the law should be sustained by reason of that part of section 35 of article 3 of the Constitution which reads as follows: "But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof, as shall not be so expressed."

■ The primary rule which governs in the construction of statutes is to ascertain the intention of the Legislature as expressed in the law. This intention should be derived from reading the entire act. The Legislature, in the original article 1119, authorized cities and towns of more than 2,000 population to fix rates to be charged consumers by public utilities upon a basis of not less than 10 per cent. net of the costs of physical properties, etc. The amended article undertook to change the rule and give cities of more than 500 population power to change rates to be charged by public utilities but made the basis of compensation of not more than 10 per cent. per annum based upon the costs of physical properties, etc. Whatever power the cities of this class possessed to fix rates was conferred by this statute. Both acts specified a limitation upon the grant of power, but the limitations are different in character. In the original act it was required that the rates prescribed should yield not less than 10 per cent. on the value of the property of the public utility; while under the amended act it is required that the rates prescribed should yield not more than 10 per cent. on such value. The Legislature granted an important power to the public officers of those cities

coming under the terms of the law. The grant was a limited, and not an unlimited, one. The character of the limitation was clearly stated in the second sentence of the act. The Court of Civil Appeals correctly held that the caption is insufficient to sustain the second sentence of the act, wherein the Legislature undertook to state the limitations under which the rate-making power should be exercised. The caption is plain and specific in terms, and makes no reference to any change in the existing law, except a change based on population alone. The second sentence is wholly unsupported by the caption. The Court of Civil Appeals holds that the second sentence of the amended act may be eliminated and the second sentence of the original act substituted therefor, and, as thus rearranged, the law is valid. Both the original and amendatory acts are embraced within one paragraph consisting of two sentences. It clearly shows that it was the intention of the Legislature to amend the original law in the manner and terms stated in the amended act. It is stated in plain language upon what conditions cities or towns of more than 500 are authorized to fix rates. The field is limited as expressed in the statute, and courts are not authorized to reshape the statute by changing the limits definitely expressed in the law. The amended act expressly declares that the granting of power to cities and towns having more than 500 population shall be exercised under the limitations stated in the act. The established rule applicable here as reflected by the decisions of the various courts is correctly stated in Lewis' Sutherland, Statutory Construction (2d Ed.) vol. 1, § 306, as follows: "If, by striking out a void exception, proviso or other restrictive clause, the remainder, by reason of its generality, will have a broader scope as to subject or territory, its operation is not in accord with the legislative intent, and the whole would be affected and made void by the invalidity of such part." See, also, Ruling Case Law, Volume 6, p. 129, § 127.

■ That cities have no inherent power to regulate rates of public utilities, and such powers must be conferred either by charter or by statute, is sustained by the great weight of authority. Foster v. City of Waco, 113 Tex. 352, 255 S. W. 1104, 1106; 19 R. C. L. § 161; 9 R. C. L. § 6; McQuillin on Municipal Corporations (2d Ed.) vol. 4, §§ 1874, 1875, 1877; Pond, Public Utilities (4th Ed.) § 536; City of Benwood v. Public Service Comm., 75 W. Va. 127, 83 S. E. 295, L. R. A. 1915C, 261; Woodburn v. Public Service Comm., 82 Or. 114, 161 P. 391, L. R. A. 1917C, 98, Ann. Cas. 1917E, 996; City of Tipton v. Tipton Light·& Heating Co., 176 Iowa, 224, 157 N. W. 844; Louisville Nat. Gas Co. v. State, 135 Ind. 49, 34 N. E. 702, 21 L. R. A. 734; Puget Sound Traction, Light & Power v. Reynolds (D. C.)

223 F. 371; City of St. Mary's v. Hope Nat. Gas Co., 71 W. Va. 76, 76 S. E. 841, 43 L. R. A. (N. S.) 994; Bluefield Waterworks & Imp. Co. v. City of Bluefield, 69 W. Va. 1, 70 S. E. 772, 33 L. R. A. (N. S.) 759; Minneapolis Gen. Elec. Co. v. Minneapolis (C. C.) 194 F. 215; Gainesville Gas & Elec. Power Co. v. Gainesville, 63 Fla. 425, 58 So. 785; Logansport v. Public Service Comm., 202 Ind. 523, 177 N. E. 249, 76 A. L. R. 838; Sumter Gas & Power Co. v. Sumter (C. C. A.) 283 F. 935; Ball v. Texarkana Water Corp'n (Tex. Civ. App.) 127 S. W. 1068, 1069; City of Kalamazoo v. Titus, 208 Mich. 252, 175 N. W. 480; Fink v. City of Clarendon (Tex. Civ. App.) 282 S. W. 912.

■■ The inherent power to regulate rates of a public utility rests with the state. Such power may be delegated by the state to municipal corporations to be exercised over public service companies operating within their limits; but the power so delegated must be expressed by clear and express terms or by clear implication, and all doubts must be resolved against the municipality. McQuillin, Municipal Corporations (2d Ed.) vol. 4, § 1875; Pond, Public Utilities (4th Ed.) § 536; State v. Sheboygan, 111 Wis. 23, 86 N. W. 657, 662. In the case of State v. Sheboygan, supra, in discussing the powers possessed by municipalities to regulate rates charged by public utilities, it was said: "* * * Neither does the power come to the city under the general authority to pass ordinances for the government and good order of the city and for the benefit of trade and commerce. To say that under this general power the city may fix rates for telephone service would be going entirely too far."

■ Articles 1011, 1106–1118, and articles 1435–1438, R. C. S., when considered independently of article 1119, do not change the rule above stated. That the Legislature did not construe the law as giving to cities and towns the power to regulate rates of public utilities as contended for here is clearly shown by the enactment of amended article 1119. This construction of the law by the lawmakers is entitled to substantial weight in construing the foregoing articles. Stephens County v. Hefner, 118 Tex. 397, 16 S. W.(2d) 804; Berry v. County Board of School Trustees (Tex. Civ. App.) 42 S.W.(2d) 121. The Legislature also enacted articles 1125 et seq., R. C. S. 1925, providing for a judicial regulation of extortionate and unreasonable rates charged by utility corporations, and prescribed the rules of procedure thereunder, but the city did not adopt the method of procedure prescribed therein, and we need not discuss them here. In 1907, the Legislature, in the exercise of its powers, enacted original article 1119, which delegated to cities and towns having more than 2,000 in population the power to regulate and fix rates to be charged by public utilities operating within

their limits in accordance with its provisions. In 1931 the Legislature undertook to amend article 1119, as above indicated. The language in that act is plain and specific, and the authority to the city is clearly expressed. That the Legislature has the authority to delegate this power to cities and towns, and, when granted, they may exercise it fully to accomplish the purposes for which it is granted, is now definitely settled in this state. City of Uvalde v. Uvalde Electric & Ice Co. (Tex. Com. App.) 250 S. W. 140, judgment recommended adopted and entered as the judgment of the Supreme Court; City of Seymour et al. v. Texas Electric Service Co. (C. C. A.) 66 F.(2d) 814, and an appeal therefrom denied by the Supreme Court of the United States, 290 U. S. ——, 54 S. Ct. 121, 78 L. Ed. ——. The Legislature has the power to authorize a commission to fix minimum rates. Stephenson v. Binford et al., 287 U. S. 251, 53 S. Ct. 181, 77 L. Ed. 288, 87 A. L. R. 721.

In the recent case of City of Seymour v. Texas Electric Service Co., supra, Judge Hutcheson, speaking for the Circuit Court of Appeals for the Fifth District, ably reviews the authorities touching this subject, and construed original article 1119 in connection with other articles of the statute mentioned herein, and correctly upheld the validity of that act granting to cities and towns of a certain class the power to fix and control rates to be charged by public utilities operating within their limits. The validity of the amended article 1119 was not involved in that case. It was pointed out in that case that the right of cities and towns to contract for rates and the right to regulate rates are entirely distinct powers. That distinction is fully sustained by the authorities and the conclusions stated herein are in full recognition of that rule, and the right of cities to construct, operate, and maintain municipal plants.

The trial court found that during the year 1929 the city contracted for the purchase, installment, and operation of its electric light plant; that on April 24, 1930, the city enacted a general regulation ordinance, being Ordinance No. 122, for various public utilities operating in the city, and on May 5, 1930, adopted Ordinance No. 123, regulating and fixing the rates for electric light companies operating in the city at the rates charged by the municipal plant on that date which were the rates adopted at the time of operation of the city plant. It was also found that on and for some time prior to the consideration and adoption of the two ordinances aforesaid the city had a population of only 1,878, and since that time has not had a population of 2,000 or over; that on April 24, 1930, the city officials were possessed of facts which, if followed up, they would have been apprised of the fact that the city did not have 2,000 population.

The court further found that on June 8, 1931, the city council adopted a resolution to the effect that the city had a population of over 500 inhabitants, and on June 9, 1931, adopted Ordinance No. 124, which was practically the same as Ordinance No. 122; that on June 24, 1931, Ordinance No. 125 was enacted, which fixed the rates to be charged by electric light companies and adopted the same rates formerly set out in Ordinance No. 123. On September 1, 1931, the city adopted Ordinance No. 126, which is a regulation ordinance, and on September 11, 1931, adopted Ordinance No. 127, fixing the rates for electric light companies at the same rates prescribed in Ordinance No. 123 and Ordinance No. 125; that each of the last four ordinances were adopted after it had been determined that the city had over 500 population by virtue of the amendment to article 1119, and the rate ordinances adopted the same rates which the city put into effect when it began operation in 1930. It therefore appears that the amended article 1119 furnishes the only basis for the ordinances adopted by the city to regulate the rates to be charged by the power company involved in this suit. In discussing the powers possessed by municipal corporations, Chief Justice Cureton, in the case of Foster v. City of Waco, said: " * * * Any fair, reasonable, substantial doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied. Of every municipal corporation the charter or statute by which it is created is its organic act. Neither the corporation nor its officers can do any act, or make any contract, or incur any liability, not authorized thereby, or by some legislative act applicable thereto. All acts beyond the scope of the powers granted are void. 1 Dillon on Municipal Corporations (5th Ed.) § 237; 28 Cyc. p. 1533; 19 R. C. L. § 75; City of Brenham v. Brenham Water Co., 67 Tex. 542, 553, 554, 4 S. W. 143; Citizens' Bank v. City of Terrell, 78 Tex. 456, 14 S. W. 1003."

In that opinion it was also said: " * * * That where a power is granted, and the method of its exercise prescribed, the prescribed method excludes all others, and must be followed. Citizens' Bank v. City of Terrell, 78 Tex. 450, 456, 14 S. W. 1003; Bryan v. Sundberg, 5 Tex. 418; see notes 1 Kent's Commentaries (13th Ed.) p. 556 (467); Blankenship v. City of Sherman, 33 Tex. Civ. App. 507, 76 S. W. 805 (writ refused); Lewis' Sutherland on Statutory Construction, vol. 2, §§ 572, 627, 628, 631; 36 Cyc. 112; Whiting v. Town of West Point [88 Va. 905, 14 S. E. 698], 15 L. R. A. 861 [29 Am. St. Rep. 750]."

Nor can the amended act be upheld on the ground that, where the statute contains provisions which are valid and others which are not, effect may be given to the valid provisions by separating them from the invalid. This is a well-known rule, but it

is not applicable here. It will be observed that the act does not declare that, if any section or provision shall be held to be invalid, this shall not affect the validity of other sections or provisions thereof. Moreover, it must appear that where, in the construction of a statute where valid provisions may be severed from those which are invalid, in order to save the law, the rule applies only where it is plain that the Legislature would have passed the act with the invalid provisions eliminated. T. & P. Ry. Co. v. Mahaffey, 98 Tex. 392, 84 S. W. 646; Williams v. Standard Oil Co., 278 U. S. 235, 49 S. Ct. 115, 117, 73 L. Ed. 287, 60 A. L. R. 596; Empire Gas & Fuel Co. v. State, 121 Tex. 138, 47 S. W.(2d) 265; 9 Tex. Jur. pp. 473, 474, and 475; State v. Laredo Ice Co., 96 Tex. 461, 73 S. W. 951; Howard v. Illinois C. R. Co., 207 U. S. 463, 28 S. Ct. 141, 52 L. Ed. 297. In the case of Williams v. Standard Oil Co., supra, the Supreme Court of the United States reviews the rules with respect to the construction of statutes, and in that case it was held:

"* * * The general rule is that the unobjectionable part of a statute cannot be held separable unless it appears that, 'standing alone, legal effect can be given to it and that the Legislature intended the provision to stand, in case others included in the act and held bad should fall.' The question is one of interpretation and of legislative intent, and the legislative declaration 'provides a rule of construction which may sometimes aid in determining that intent. But it is an aid merely; not an inexorable command.' Dorchy v. Kansas, 264 U. S. 286, 290, 68 L. Ed. 686, 689, 44 S. Ct. 323, 325.

"In the absence of such a legislative declaration, the presumption is that the Legislature intends an act to be effective as an entirety. This is well stated in Riccio v. Hoboken, 69 N. J. Law, 649, 662, 63 L. R. A. 485, 55 A. 1109, 1113, where the New Jersey Court of Errors and Appeals, in an opinion delivered by Judge Pitney (afterward a justice of this court), after setting forth the rule as above, said:

"'In seeking the legislative intent, the presumption is against any mutilation of a statute, and the courts will resort to elimination only where an unconstitutional provision is interjected into a statute otherwise valid, and is so independent and separable that its removal will leave the constitutional features and purposes of the act substantially unaffected by the process.' "

We have carefully considered the amended act, and, under the well-established rules governing the construction of statutes, it cannot be upheld. The Constitution has wisely provided that the caption should state the contents of the bill in order to advise the public and the members of the Legislature of its contents. In many cases the courts have held that a law which does not comply with the constitutional provision is void. Arnold v. Leonard, 114 Tex. 535, 273 S. W. 799; Ward Cattle & Pasture Co. v. Carpenter, 109 Tex. 105, 200 S. W. 521; Ex parte Heartsill, 118 Tex. Cr. R. 157, 38 S.W.(2d) 803; Ex parte De Silvia, 88 Tex. Cr. R. 635, 229 S. W. 542; Hamilton v. Ry. Co., 115 Tex. 455, 283 S. W. 475; Gulf Production Co. v. Garrett, 119 Tex. 72, 24 S.W.(2d) 389; Bitter v. Bexar County (Tex. Com. App.) 11 S.W. (2d) 163, 168; Singleton v. State, 53 Tex. Cr. R. 626, 111 S. W. 736; Adams v. Water Works Co., 86 Tex. 485, 25 S. W. 605, 606.

The amended article 1119, being declared unconstitutional, leaves the original act in full force and effect. Culberson v. Ashford, 118 Tex. 491, 18 S.W.(2d) 585; James C. Davis, Director-General, v. George Wallace, 257 U. S. 478, 42 S. Ct. 164, 66 L. Ed. 325.

Since it appears that the population of the city of Farmersville is less than 2,000 and that all ordinances passed with respect to regulating the rates to be charged by the power company do not find support under the provisions of original article 1119, and it further appearing that the ordinances so passed cannot be sustained by virtue of the provisions of the amended article 1119 because of its invalidity, there is no ground left by virtue of the ordinances, upon which the city may sustain this suit against the power company.

We therefore recommend that the judgment of the Court of Civil Appeals be reversed and that the judgment of the trial court be affirmed.

CURETON, Chief Justice.

The judgment of the Court of Civil Appeals is reversed, and that of the district court is affirmed, as recommended by the Commission of Appeals.