GENERAL TELEPHONE COMPANY OF
THE SOUTHWEST, Appellant,

v.

CITY OF EDEN et al., Appellees.

No. 10342.

Court of Civil Appeals of Texas.

Austin.

June 29, 1955.

Rehearing Denied July 27, 1955.

Don S. Holdridge, San Angelo, for appellant.

Swaim & Swaim, Eden, Kerr & Gayer, San Angelo, for appellee.

GRAY, Justice.

This appeal is from a judgment denying appellant a temporary injunction enjoining the enforcement of a telephone rate ordinance passed by the City of Eden, Texas.

Appellant, General Telephone Company of the Southwest, sued the City of Eden, its Mayor and the members of its City Council for a permanent injunction restraining the enforcement of the above mentioned rate ordinance. Pending a final hearing appellant requested a temporary injunction. It alleged that the rates fixed by the complained of ordinance were so low as to deprive it of a fair return on the fair value of its property "used and useful in the furnishing of telephone service in the City of Eden, Texas; and plaintiff's said property is being confiscated in violation of" its rights.

Appellees answered by a plea in abatement and a general denial. A hearing was had, appellees' plea in abatement was overruled and appellant's request for a temporary injunction was denied.

By its five points appellant complains that the trial court abused its discretion in denying the temporary injunction prayed for.

The sole question to be here decided is: Did the trial court abuse its discretion by entering the order appealed from? 24 Tex.Jur., Sec. 253, p. 313.

There were no findings of fact and conclusions of law filed. There is however a statement of facts before us and it becomes our duty to examine the record and view the evidence in the light most favorable to the trial court's judgment and indulge every legitimate presumption consistent with the record in support of that judgment.

The complained of ordinance which prescribes rates to be charged for local exchange telephone service in the city was enacted October 14, 1952, and as to such rates provides:

| "Class of Service | Monthly Rate |
|---|---|
| One Party Business Service | $5.50 |
| Two Party Business Service | 4.00 |
| Business Extension Service | 1.50 |
| One Party Residence Service | 3.50 |
| Two Party Residence Service | 3.00 |
| Residence Extension Station | 1.00 |
| Semi-Public Service (Guarantee) | .16 per day" |

Art. 1119, Vernon's Ann.Civ.St., gives to the governing bodies of cities and towns incorporated under the General Laws power to regulate, by ordinance, the rates to be charged by companies furnishing telephone service to the public, and provides that rates shall not be prescribed which will yield more than a fair return upon the fair value of the property used and useful in rendering service to the public but which return in no event shall ever exceed eight per cent per annum.

Appellant alleged that:

"The defendant, City of Eden, Texas, is now, and at all times pertinent hereto,

was a municipal corporation located in Concho County, Texas, organized and existing under and by virtue of the General Laws of the State of Texas, * * *"

Exhibits, testified to be correct by appellant's officers and employees, were in evidence. These show the condition of the "Eden Local Exchange" and the value of its property as of September 30, 1954. The present value, based on a "Per cent condition," is $82,976.32. The investment in the telephone plant "stated at Fair Value" is $105,334.26. As we understand the record the "present value" of the plant represents a percentage of the "fair value" of the property which is the estimated reproduction cost of the property. One exhibit shows, for the year ending September 30, 1954, operating revenue, $22,672.35, and net operating expenses, $23,334.22. Another exhibit "Statement of Net Operating Income at September 30, 1954 Levels Annualized" shows total operating revenues, $22,538.21, and the total operating expenses, $23,658.68. Both exhibits show a minus net operating income, the first $671.87 and the latter $1,120.57.

In each of the above mentioned exhibits the total of the operating revenues is arrived at by listing the amounts of: local service revenue, miscellaneous revenues, less uncollectible operating revenues.

The total of the operating expenses is arrived at by listing the amounts of: maintenance expense, traffic expense, commercial expense, accounting and other general office expense, other operating expense, depreciation, State and local taxes and other Federal taxes.

The number of telephones in the Eden Exchange was testified to by Mr. Brink, appellant's vice president and comptroller. He testified:

"Q. Mr. Brink, are you familiar with the facts as to the number of residential telephones in the City of Eden? A. I think I can tell you what they are, yes. This is at September 30,

1954—number of residence phones were 424, which include 15 extensions, 149 multiparty, rural.

"Q. How many you say in rural? A. 149; 137 two party.

"Q. That is in town? A. That is in town, and 123 one party.

"Q. That makes a total— A. 424 in residence.

"Q. All told, have you totaled that? A. Equal 424 residence phones.

"Q. I don't believe—you have 424 residential telephones? A. That's right.

"Q. And including 15 extensions? A. That's right.

"Q. And then you have 149 rural? A. Those are residence; that is part of the residence I broke down into the components of 424.

"Q. And then you just have 137 two party? A. Still on residence now; take 127, 137, 149 and 15 extensions will equal 424 residence phones.

"Q. Now, business, how many? A. Business has a total of 108, made up of 83 one party, six two party, 4 rural and 15 extensions."

Mr. Alexander, an appraisal engineer for appellant, testified that he had recently examined the telephone plant in the Eden Exchange, and as to his inspection of the properties said:

"Q. Mr. Alexander, did you go down to Eden and personally inspect the various items? A. Yes, sir.

"Q. That you valued? A. I did.

"Q. You drove out in the country? A. Drove every foot of the rural property.

"Q. You found it in pretty bad shape? A. Some in pretty bad shape, and some in pretty good shape.

"Q. Can you remember one you found in good shape? A. Yes.

"Q. Which one? A. One that was re-built recently that there is a farm to market road that turns south off the San Angelo road, and the—that's been rebuilt not too long; that would be in 97 or 98 percent condition.

"Q. That is the only one you found in good shape? A. No, it is not; in fact I haven't—our portion—I am not saying the subscriber-owned extensions are in very good shape, because they are not, but our portion of it, even the rurals, were in good operating condition most of the time; there is one portion, about three miles, that is really sadly in need of being re-built.

"Q. Did you try to talk over any of the rural telephones? A. No, sir.

"Q. I wouldn't think you did. A. Well, you do have a R E A parallel in that exchange that is very bad; I know that is true, and of course this is calculated on the construction, that of those lines that are grounded and as they are built and not as they would be if they were rebuilt to make them, oh, 100 percent metallic which would make a difference in your transmission."

Mr. Martin, appellant's general traffic manager, testified as to the exhibits and said he separated "Toll from local investment revenue." Toll for long distance telephone calls was extended and "subscriber line usage" was separated, by percentage, into toll and local usage and excluded from local investment revenue. No mention was made of excluding charges for rural telephone service or rural telephone properties.

It appears certain that rural telephones and rural properties are included in the exhibits. In any event there is nothing to show rural properties are excluded. The evidence shows that a portion, if not the most, of the rural property is in a bad state of repair and there are 149 rural telephones the rate of charges for which is not listed in the ordinance supra.

The ordinance in question, in part, recites:

" * * * the City Council recognizes the right of the Telephone Company to earn a fair return on the fair value of its property devoted to the rendition of telephone service within the City of Eden, * * *"

The above ordinance does not undertake to fix rates for rural service and the above quotation appears to exclude any idea that it did.

■ By Art. 1119 supra the Legislature delegated to municipal corporations the power to regulate rates to be charged by public utilities operating within their limits. Texas Louisiana Power Co. v. City of Farmersville, Tex.Com.App., 67 S.W.2d 235. This cause is cited as authority for this statement in Kousal v. Texas Power & Light Co., 142 Tex. 451, 179 S.W.2d 283.

■ There is no attempt made to separate the rural telephones and the rural property in the valuation of the plant as shown by the exhibits, and no apportionment of the total operating expense and net operating income to the rural property is given. We think the burden of showing these facts rested on appellant.

Among the items included as operating expenses in the exhibits referred to supra there are listed respectively: maintenance, $6131.02, and $6186.02; depreciation, $2984.23 and $3015.49; State and local taxes, $1382.13 and $1378.06. There is no way for us to apportion the operating expense to the rural portion of the telephone plant, but, in any event, if it was so apportioned and the result applied to the apportioned total of operating revenues the total operating income of the plant would most probably be sums different from those stated in the exhibits.

■ Appellant failed to show that the net operating income from that portion of its plant subject to the rates fixed by the ordinance was less than a fair return on its investment within the city and the trial

court was justified in denying the temporary injunction for this reason.

The record shows that on September 14, 1954, the City Council met and at that meeting appellant's request for an increase in telephone rates was considered. There was introduced in evidence a certified copy of purported minutes of that meeting which in part reads:

"Representatives of The General Telephone Company of the Southwest of San Angelo, Texas, presented a brochure to the City Council, in which they asked for an increase in telephone rates in the Eden Exchange. Said brochure was filed with the City Secretary. After a lengthy discussion, a motion was made by M. J. Green and seconded by J. T. Jackson and carried unanimously by the Council, denying an increase in rates to the Telephone Company."

It appears these minutes were never approved and on March 1, 1955, the same were amended to read:

"Representatives of the General Telephone Company of the Southwest of San Angelo presented a brochure to the City Council in which they asked for increase in telephone rates in Eden Exchange. Said brochure was filed with the City Secretary. Much discussion was had pro and con by the City council and representatives of General Telephone Company of the Southwest. The City Council was not opposed to increasing the rates if the facts justified the same, but the Council told the telephone people that the telephone system in Eden was antiquated and out of date and that the lines were in poor condition and that before the City would vote an increase in rates as requested that it believed it was only fair to ask the telephone people what plans they had for improving the telephone system. They were told they had no immediate plans for improving the system, that they must have an increase in rates as requested and that they would do what they could to work it out in the future. The City Council told them that they didn't feel that was a fair proposition to make as the people were greatly dissatisfied with the conditions of the telephone system and the services which were being rendered to the said people. This type of discussion went on for a considerable length of time and a motion was finally made by M. J. Green and seconded by J. T. Jackson and unanimously passed that the request of the telephone people for the requested amount of increase in rates be not approved at this meeting as it was believed the matter could be worked out in due time."

There is evidence that appellant requested a rate increase of 100 per cent and that its representatives were asked if they would consider any increase and that they advised the City Council they would not consider anything but a 100 per cent increase. Appellant's representative testified that an increase of 10 per cent might have been mentioned but if an increase in rates was mentioned "it was so small that we couldn't possibly have considered it."

The meaning of the term per cent used in the foregoing testimony is not given or explained. It is probable that the trial court concluded that the 100 per cent increase requested was more than the statute, Art. 1119, supra, authorized, and that the 10 per cent increase refused by appellant would have been adequate.

We think it is not our problem to here mathematically apply the per cent of increase mentioned in the above testimony, however the net operating income of the plant is shown by the above mentioned exhibits, and if a 10 per cent increase in rates had been accepted the net operating income from the plant would have been changed from the amounts shown. (Appellant does not say that the requested increase would be used for improvements of the plant, but the amended minutes supra state that the Council was told that appellant "had no immediate plans for improving the system.")

384

■ This suggested finding when resolved in favor of the trial court's judgment sustains it. Southwestern Associated Tel. Co. v. City of Dalhart, Tex.Civ.App., 254 S.W.2d 819. Er. ref., n. r. e.

■ It is our opinion that appellant failed to discharge the burden resting on it to establish facts entitling it to the injunction prayed for. Jones v. Smith, Tex. Civ.App., 248 S.W.2d 1022, and that the judgment of the trial court is supported by evidence of a substantial and probative character and it must be affirmed. Southwestern Associated Tel. Co. v. City of Dalhart supra. General Telephone Company of the Southwest v. City of Wellington, Tex. Civ.App., Amarillo, 279 S.W.2d 922, decided by the Amarillo Court of Civil Appeals May 2, 1955, but not yet published.

The judgment of the trial court is affirmed.