C. L. BOWLING et al., Appellants,

v.

The CITY OF PEARLAND, Texas, et al., Appellees.

No. 570.

Court of Civil Appeals of Texas, Houston (14th Dist.).

March 8, 1972.

Rehearing Denied March 29, 1972.

C. Wayne Holder, Holder & Germany, Freeport, for appellants.

Bobby J. Williams, City Atty., Pearland, William W. McNeal, III, McNeal & Thrash, Alvin, for appellees.

TUNKS, Chief Justice.

On February 6, 1971, the City of Pearland, in Brazoria County, Texas held a special election to determine whether a proposed home rule charter should be adopted. The result, by a margin of 5 votes, was in favor of adopting the charter. The appellants, C. L. Bowling and other residents of the city, filed suit challenging the validity of the election. The trial court, at the close of contestants' testimony, granted the city's motion for judgment. Judgment was rendered declaring the election valid. The contestants have perfected appeal from that judgment.

The principal contention of the contestants relates to the publication of notice of the election. On the 14th and 21st days of January, 1971, notice was published in The Sun Progress, a newspaper of general circulation in Brazoria County. Notice of the election was also posted in two public places in the city on December 18, 1970.

The two publications of notice were 22 and 15 days before the special election. Contestants contend that Vernon's Tex. Rev.Civ.Stat.Ann. art. 1166 (1913) requires that notice of a special election on the question of the adoption of a home rule charter be published not less than 30 nor more than ninety days before such election. References herein to statutes are references to Texas Revised Civil Statutes Annotated unless otherwise designated.

Chapter 13 of Title 28 of the Texas Civil Statutes deals with Home Rule Cities. Article 1165, the first article of that chapter is in the following language:

"Cities having more than five thousand inhabitants may, by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters, subject to such

limitations as may be prescribed by the Legislature. No charter or any ordinances passed under said charter shall contain any provision inconsistent with the Constitution or general laws of this State; said cities may levy, assess and collect such taxes as may be authorized by law, or by their charters; but no tax for any purpose shall ever be lawful for any one year which shall exceed two and one-half percent of the taxable property of such city, and no debt shall ever be created by any city unless at the same time provision be made to assess and collect annually a sufficient sum to pay the interest thereon and create a sinking fund of at least two per cent thereon. No city charter shall be altered, amended or repealed oftener than every two years. The governing body of such city may, by two-thirds votes of its members, or upon petition of ten per cent of the qualified voters of said city shall provide by ordinance for the submission of the question, 'shall a commission be chosen to frame a new charter.' "

Article 1166 is as follows:

"The ordinance providing for the submission of such question shall require that it be submitted at the next regular municipal election, if one should be held, not less than thirty nor more than ninety days after the passage of said ordinance; otherwise it shall provide for the submission of the question at a special election to be called and held not less than thirty days nor more than ninety days after the passage of said ordinance and the publication thereof in some newspaper published in said city. The ballot containing such question shall bear no party designation, and provisions shall be made thereon for the election from the city at large of a charter commission of not less than fifteen members, nor more than one member for each three thousand inhabitants, provided that a majority of the qualified voters, voting on said question shall have voted in the affirmative."

Article 1165 refers to elections involving three different subjects—the adoption of a charter, the amendment of a charter and the choosing of a commission to frame a new charter. The notice required to be given on an election to amend a charter is specifically provided by art. 1170. It is appellants' contention that by the use of the language "the submission of such question" in art. 1166 the legislature referred to both an election to adopt a charter and to an election on the question as to whether a charter commission should be chosen. The appellees contend that the quoted language refers only to an election on the proposition of the choosing a charter commission and that the notice requirements of art. 1166 are not applicable to an election on the question of the adoption of a charter.

The basic rules to be followed by a court in the construction of a statute require that the court seek the intention of the legislature in enacting the statute. Calvert v. British-American Oil Producing Co., 397 S.W.2d 839 (Tex.Sup.1965); Tex.Rev.Civ.Stat.Ann. art. 10. It is also an established rule that in the construction of one statute other statutes in pari materia will be read and considered. Thus in seeking the legislative intent in enacting art. 1166 we must consider the other statutes in Chapter 13 of Title 28. Calvert v. Fort Worth National Bank, 163 Tex. 405, 356 S.W.2d 918 (1962).

The language of the final sentence of art. 1166 suggests that "such question" referred to in the first sentence is a reference to an election on the question of the choosing of a charter commission. The provisions for the ballot to be used in the election on "such question" clearly relate to a charter commission election.

The language of art. 1167, in pari materia, also suggests that the preceding article relates to a special election on the question of choosing a commission. It refers to the charter framed by "said commission", the one chosen pursuant to the election provided for in the preceding statute. It also

separately provides for the submission of the issue of the adoption of the charter and for the mailing of copies of the proposed charter to voters not less than thirty days before such submission.

The provisions of art. 1170, also in pari materia, suggest a conclusion that art. 1166 refers to only a charter commission election. It makes provision for notice to be given of a special election to amend a charter, thus refuting a conclusion that the notice provisions in art. 1166 relate to all of the three elections contemplated by art. 1165.

Neither party has cited any case directly holding upon the question here involved. The appellants have cited Turner v. Lewie, 201 S.W.2d 86 (Tex.Civ.App.-Waco 1947, writ dism'd). There is language in that opinion to the effect that the notice provisions in art. 1166 apply to a special election on the proposition of adopting a charter. That case, however, involved a special election to amend a charter, as to which notice is provided for in art. 1170. The language relating to notice required to be given of a special election to adopt a charter was dictum. With due respect for the learned judge who wrote that language we feel compelled to disagree with it.

Neither art. 1166 nor any other statute in Chapter 13 of Title 28 provides for the giving of notice of a special election by a city to adopt a home rule charter. Copies of the proposed charter were mailed to the voters of the city not less than 30 days before the election as required by art. 1167. The notices by publication met the requirements of art. 29e and of Tex.Election Code Ann. art. 4.05, V.A.T.S. (1969). Appellants' point of error relating to the notice of the election is overruled.

■ The proposed charter, which was the subject of the election here involved, identified the area to which it applied as being "within the corporate limits as now established and as hereafter altered" of the City of Pearland. A number of points of error in appellants' brief are based upon the contention that such description of the proposed corporate limits was not sufficient to permit a determination that a voter was or was not a resident of the proposed area. It is said that the election was invalid because there was no way to thus test the qualifications of the voters. Those points are overruled. One of the city's engineers testified that the existing city boundaries were identifiable and that he had prepared a map showing them. He testified that he had made the survey by reference to the city's original incorporation and the various annexation ordinances that had been enacted thereafter. The city secretary had with her such a map when she testified in response to questions by attorneys for the contestants and made reference to it. It was not offered in evidence. The annexation ordinances of which the contestants complain have been validated by arts. 966b and 974d–10. See Jamison v. City of Pearland, 401 S.W.2d 322 (Tex.Civ.App.-Waco 1966, no writ).

■ The appellants' five final points of error relate three persons who voted and whom the contestants claim should not have been permitted to vote, to one person who was not permitted to vote and whom the contestants say should have been permitted to vote and to a person who did not receive a copy of the charter as provided by art. 1167 and did not vote. These five people testified. Of the three who voted none was asked or testified as to how he voted nor does the evidence otherwise show how he voted. Of the two who did not vote neither was asked or testified as to how he would have voted nor does the evidence otherwise show how he would have voted. The contestants, therefore, did not sustain their burden of showing that these irregularities, if they were such, affected the result of the election. City of La Grulla v. Rodriguez, 415 S.W.2d 701 (Tex.Civ.App.-San Antonio 1967, writ ref'd n. r. e.); Sepulveda v. Trevino, 301 S.W.2d 957 (Tex.Civ.App.-Eastland 1957,

writ dism'd) ; Marks v. Jackson, 130 S.W. 2d 925 (Tex.Civ.App.-Galveston 1939, writ dism'd). The appellants' last five points of error are overruled.

The judgment of the trial court is affirmed.