**CITY OF SAN MARCOS, Texas, Appellant,**

**v.**

**LOWER COLORADO RIVER AUTHORITY,**
Appellee.

No. 12110.

Court of Civil Appeals of Texas,
Austin.

April 10, 1974.

Rehearing Denied April 24, 1974.

James W. Wilson, McGinnis, Lochridge & Kilgore, Austin, for appellant.

C. C. Small, Jr., Small, Craig & Werkenthin, Austin, for appellee.

O'QUINN, Justice.

The City of San Marcos brought this lawsuit against the Lower Colorado River Authority seeking a declaratory judgment asseverating its power as a home rule city to fix rates charged by any electrical utility serving its inhabitants, including rates charged by the Authority selling at retail in San Marcos.

The City also sought to enjoin the Authority from increasing its rates beyond charges prescribed in a city ordinance adopted December 19, 1972, without prior approval of the city council. The City sought alternatively to set aside action of the Authority's board of directors adopting increased rates on October 19, 1972, on the ground that the Authority had failed to comply with the Texas Open Meeting Law (Article 6252–17, Vernon's Ann.Civ.Sts.).

The Authority answered and disputed the City's claim of jurisdiction over rates charged by the Authority and asserted its own exclusive power to set rates for its electric service. The Authority denied that the increased rates adopted by its directors were invalid by reason of noncompliance with the Open Meeting Law. The Authority alternatively contended that the City's rate ordinance was void for lack of notice to the Authority prior to adoption. The Authority prayed for declaratory judgment affirming its contentions.

The trial court entered judgment declaring that the City of San Marcos was without jurisdiction to set rates for the sale of electricity by the Lower Colorado River Authority within the City's corporate limits.

We will reverse that part of the judgment of the trial court and render judgment that the City of San Marcos has exclusive jurisdiction to fix rates for the sale of electricity to the inhabitants of the City.

The trial court further rendered judgment that the rate ordinance adopted by the City was void for lack of notice to the Authority, and that the two attempts by the Authority to fix rates were invalid because of noncompliance with the Open Meeting Law. The court also denied the City injunctive relief. These actions of the court will be considered and disposed of incidental to decision on the principal issue of jurisdiction to fix rates.

The City of San Marcos, being a home rule city, operates under the provisions of section 5, Article XI, of the Constitution of Texas, Vernon's Ann.Tex.Const. (As amended November 5, 1912). The effect of the home rule amendment is to authorize the citizens of any city having more than 5,000 inhabitants to adopt a charter which becomes the basic law of the city and may contain any provisions approved by the people not inconsistent with the general laws of the state or the Constitution. The voters of San Marcos adopted a charter in February of 1967, and in Article XI of the charter delegated to the city council " . . . full power, after notice and hearing, to regulate by ordinance, the rates of every public utility operating in the City . . . " (sec. 11.09, Art. XI, San Marcos Charter).

In April of 1967, two months after adoption of the home rule charter, the city council of San Marcos granted a franchise for a term of ten years to the Lower Colorado River Authority under which the Authority was accorded the right to distribute "electric power and energy for lights, heat and power, including distribution of electric power and energy to the City and its inhabitants . . . " The Authority acquired the electrical distribution physical properties within the City of San Marcos from the Texas Power and Light Company in September of 1939, an acquisition which also included a franchise for fifty years dating from June 11, 1925.

Following the home rule amendment to the Constitution in 1912, the Legislature in 1913 enacted laws enumerating "for greater certainty" numerous powers that might be exercised by cities adopting charters for local self-government. (Art. 1175, Vernon's Anno.Civ.Sts.; Acts 1913, p. 307). Among the powers enumerated by the Legislature is the power of home rule cities to grant franchises and fix utility rates:

"12. To prohibit the use of any street, alley, highway or grounds of the city by any telegraph, telephone, *electric light*, street railway, interurban railway, steam railway, gas company, *or any other character of public utility* without first obtaining the consent of the governing authorities expressed by ordinance . . . [and] *To determine, fix and regulate the charges, fares or rates of any person, firm or corporation enjoying or that may enjoy the franchise or exercising any other public privilege in said city . . . "* (Emphasis supplied) (Subd. 12, Art. 1175)

In the same Act of 1913 the Legislature stated, in Article 1176, "The enumeration of powers hereinabove made shall *never be construed to preclude, by implication or otherwise, any such city from exercising the powers incident to the enjoyment of local self-government*, provided that such powers shall not be inhibited by the State Constitution." (Emphasis supplied)

San Marcos, as a home rule city, must look to its own charter in determining whether it has power to fix electric utility rates, and will look to enactments of the Legislature only to ascertain whether by general law any limitations on the charter power have been imposed. Yellow Cab Transit Co. v. Tuck, 115 S.W.2d 455 (Tex.Civ.App. Dallas 1938, writ ref.); Forwood v. City of Taylor, 147 Tex. 161, 214 S.W.2d 282 (1948); State v. City of La Porte, 386 S.W.2d 782 (Tex.Sup. 1965).

The Authority contends that Article 1175 limits the charter power because by its terms the statute does not embrace a "municipal corporation such as" the Lower Colorado River Authority, created by Arti-

cle 8280–107, V.A.C.S. (Acts 1934, 43rd Leg., 4th C.S., p. 19, ch. 7). The Authority argues that the words "person, firm or corporation" employed in the Article 1175 must be construed to exclude a corporation created by the Legislature, as distinguished from a private corporation. Reliance in this position is on the rule stated by the Supreme Court in State v. Central Power and Light Company, 139 Tex. 51, 161 S. W.2d 766 (1942), in which the Court held that the Texas anti-trust statutes were "not intended to include a combination between a municipality and a third party."

We find the rule of that case inapplicable to the statute here under consideration.

When all of the language of subdivision 12 of Article 1175 is examined, it becomes apparent that the words "person, firm or corporation" are used, not in a restrictive sense as to the peculiar character or origin of the utility that may occupy the streets of a city for the purpose of selling services to the inhabitants, but rather as descriptive of any and all entities "that may enjoy the franchise or [may be] exercising any other public privilege in said city." In fact, the statute, after enumerating specific types of utilities to be denied use of streets until consent is given by city ordinance, enlarges the scope of the list to include "any other character of public utility."

■ Read with Article 1176, set out above in full, the provisions of subdivision 12 of Article 1175 make clear the intention of the Legislature not "to preclude, by implication or otherwise, any such city from exercising the powers incident to the enjoyment of local self-government . . ." It is an established rule that courts will construe the language of a statute liberally to reach the true objective of the enactment and thereby give effect to the legislative intent. Lone Star Gas Company v. Sheaner, 157 Tex. 508, 305 S.W.2d 150 (1957); Whitmarsh v. Buckley, 324 S. W.2d 298 (Tex.Civ.App. Houston 1959, no writ); 53 Tex.Jur.2d, Statutes, secs. 194 et seq. The courts must ascertain the purpose for which the statute was enacted, as the dominant consideration in construing a statute is the intention of the Legislature. Flowers v. Dempsey-Tegeler and Company, 472 S.W.2d 112, 115 (Tex.Sup.1971).

The statute under consideration in State v. Central Power and Light, *supra*, as pointed out by the Supreme Court, was "highly penalizing in its nature," being an anti-trust law, found in both civil and criminal statutes of the state. "It is thought," the Court stated, "that if the Legislature had intended to visit such severe penalties on municipalities, it would have used more apt language to describe them." (161 S.W.2d 768, col. 2)

■ Ordinarily, statutes imposing penalties or forfeitures, levying a tax, or in derogation of common law will be strictly construed in determining whether the act applies to persons or entities not clearly included by the language of the law. See 53 Tex.Jur.2d, Statutes, secs. 195 et seq. and cases cited.

Attorney's fees, authorized under Article 2226, which are in the nature of a penalty or punishment for failure to pay a just debt (Huff v. Fidelity Union Life Insurance Co., 158 Tex. 433, 312 S.W.2d 493), may not be collected from a municipal corporation since municipalities are not construed to be within the words "against a person or corporation" found in the statute. City of Houston v. L. J. Fuller, Inc., 311 S.W.2d 285 (Tex.Civ.App. Houston 1958, no writ); City of Houston v. Howe and Wise, 323 S.W.2d 134, 151 (Tex.Civ. App. Houston 1959, writ ref. n. r. e.). The anti-trust statutes, construed in State v. Central Power and Light, were given the same strict construction in State v. Fairbanks-Morse and Company, 246 S.W. 2d 647, 658 (Tex.Civ.App. Dallas 1952, writ ref. n. r. e.). Article 7589a, an act making it unlawful "for any person, firm or private corporation to divert the natural flow" of surface waters to the damage of other property owners was held by the Su-

preme Court not to include municipal corporations. City of Houston v. Renault, Inc., 431 S.W.2d 322 (Tex.Sup.1968).

The rules of strict construction and liberal construction of a statute were juxtaposed in a decision by the San Antonio Court of Civil Appeals in 1963. The Court cited State v. Central Power and Light in support of a strict construction when the statute "identifies the person against whom a violation is charged," but said that when the statute is intended to protect an interest, a liberal construction is followed. City of Corpus Christi v. Atlantic Mills Servicing Corporation, 368 S.W.2d 640 (Tex. Civ.App. San Antonio 1963, writ ref. n. r. e.).

■ We hold that the purpose of subdivision 12 of Article 1175, as expressed in that statute and in Article 1176, was to make clear the constitutional power of home rule cities to require all utilities to obtain a franchise to occupy the public streets and to render utility services to the inhabitants thereafter subject to the powers of the city to fix and regulate rates and charges for such services. If we entertained any doubt that the statute is applicable to all utilities, including the Lower Colorado River Authority, we would find further support for our holding in Article 1436a, enacted in 1949. (Art. 1436a, V.A. C.S.; Acts 1949, 51st Leg., p. 427, ch. 228, as amended by Acts 1967, 60th Leg., pp. 730, 731, ch. 306, sec. 2, eff. August 28, 1967.)

Article 1436a deals specifically with the subject of the types of corporations required to obtain franchises from all cities within which these utilities operate. The statute names corporations organized "under the Electric Cooperative Corporation Act [Art. 1528b] . . . and all other corporations (*including River Authorities created by the Legislature of this State*) engaged in . . . distribution of electric energy . . ." (Emphasis supplied)

The Authority argues that Articles 1436a and 1175 may not be read *in pari materia* because the latter is found in Title 28, dealing with cities, towns and villages, and the former is found in Title 32 on corporations. Both statutes deal in part with the legal entities required to obtain franchises from cities before entering to serve the inhabitants as a utility. The two statutes relate to the same class of entities and to the same subject matter and are therefore *in pari materia*. Calvert v. Fort Worth National Bank, 163 Tex. 405, 356 S.W.2d 918 (1962); Bowling v. City of Pearland, 478 S.W.2d 143 (Tex.Civ.App. Houston 14th 1972, writ dsmd.); 53 Tex.Jur.2d, Statutes, sec. 186.

■ The Authority contends that the power "of a home rule city to regulate rates, regardless of whether the source of that authority is a statutory grant (Art. 1175) or the city charter promulgated under the Home Rule Amendment, has been abrogated by the specific legislative delegation of power to the LCRA to set its own rates (Art. 8280–107)."

The Lower Colorado River Authority was created at the fourth called session of the 43rd Texas Legislature in 1934 (Acts 1934, 43rd Leg., 4th C.S., p. 19, ch. 7; Art. 8280–107, V.A.C.S.), pursuant to provisions of Section 59 of Article 16 of the Constitution, Vernon's Ann.St.

In Section 8 of the Act the governing board of the Authority was enjoined to "establish and collect rates and other charges for the sale or use of water, water connections, power, electric energy or other services sold, furnished, or supplied by the District which fees and charges shall be reasonable and non-discriminatory and sufficient to produce revenues adequate;

"(a) to pay all expenses . . . [of] operation and maintenance . . .

"(b) to pay the interest on and principal of all bonds issued under this Act . . .

"(c) to pay all sinking fund and/or reserve fund payments agreed to be made in respect of any such bonds . . . out of such revenues . . .

"(d) to fulfill the terms of any agreements made with the holders of such bonds . . ."

The Authority argues that in granting these powers to the Authority the Legislature abrogated, or repealed, the provisions of Article 1175, recognizing rate making powers of home rule cities, and set aside the constitutional charter powers of home rule cities to fix utility rates in those cities in which the Authority is permitted to enter and serve the inhabitants as a public utility.

This contention is without support, unless by clear and express terms, or by clear implication, the state delegated its inherent power to regulate rates of a public utility to the Lower Colorado River Authority in explicit terms of the Special Act creating the Authority, and all doubts as to such delegation by the Legislature must be resolved against the Authority. Texas-Louisiana Power Company v. City of Farmersville, 67 S.W.2d 235, 238 (Tex.Comm.App. 1933); Southwestern Bell Telephone Company v. Houston Independent School District, 397 S.W.2d 419 (Tex.Sup.1965).

In the same section in which the Legislature permitted the governing board of the Authority "to establish and collect rates" the state *reserved* its inherent power to regulate rates of the Authority in clear terms:

"*Nothing herein shall be construed as depriving the State of Texas of its power to regulate and control fees and/or charges to be collected for the use of . . . power, electric energy, or any other service . . .*" subject to the proviso that regulatory authorities shall not set rates which impair the security of bondholders. (Emphasis supplied)

Neither by express language, nor by clear implication, did the Legislature delegate to the Authority the power "to regulate and control" such rates as the governing board might "establish," but, on the contrary, the Legislature expressly reserved that power and declared that nothing should be "construed as depriving the State . . . of its power to regulate and control" rates established by the Authority.

Since 1907 the power of the state to regulate rates charged by public utilities within the corporate boundaries of cities has been delegated by the Legislature to the cities. (Acts 1907, 30th Leg., p. 217, ch. 117; Arts. 1119 through 1123, V.A.C.S., to which was added Art. 1124 in 1921 to include home rule cities and prescribe standards in fixing rates: Acts 1921, 37th Leg., 1st C.S., p. 152, ch. 48).

After adoption of the home rule amendment to the Constitution by the electorate in 1912, the Legislature in 1913 recognized and enumerated "for greater certainty" the delegation by the state of utility rate making power to home rule cities (Art. 1175, subd. 12). Thus since 1907 it has been the policy of this state that the power to regulate utility rates within the boundaries of cities has been delegated to the cities, subject to procedures prescribed by the state for arriving at reasonable rates, with the right of appeal to the courts to test reasonableness of the rates fixed.

■ That the Legislature may delegate power to regulate utility rates to cities "as to utilities operating within the limits of such municipal corporations" is firmly established, and when the power is so delegated to the cities, it may be exercised fully to accomplish the purposes for which it was granted. Texas-Louisiana Power Company v. City of Farmersville, *supra,* (67 S.W.2d at 239); Kousal v. Texas Power and Light Company, 142 Tex. 451, 179 S.W.2d 283, 285 (Tex.Comm.App.1944, opinion adopted).

It is compatible with the state policy of delegating rate making to the cities for home rule cities to provide by charter that utility rates within the city will be regulated by the local governing body. This was recognized by the Legislature in Subdivision 12 of Article 1175, which was not a *grant* of such power, but a general law to which the cities must look only to ascertain whether the charter power is limited or curtailed in any manner. We have already considered this matter and concluded that Article 1175 does not limit, change, or curtail the provisions of the San Marcos city charter empowering the city council to fix rates charged by utilities operating within the city limits to serve the inhabitants.

The Legislature could withdraw from all cities of the state, including home rule cities, the power to regulate rates of utilities operating within the cities and provide some other means of regulating rates. Only by a *general law*, however, may the Legislature limit charter powers of a home rule city.

Although "by general laws enacted by the Legislature of this State" the broad powers granted to home rule cities by the Constitution (Art. XI, Sec. 5) may be limited, the intention of the Legislature to impose such limitations must "appear with unmistakable clarity." City of Sweetwater v. Geron, 380 S.W.2d 550, 552 (Tex.Sup. 1964); Wagstaff v. City of Groves, 419 S.W.2d 441, 443 (Tex.Civ.App. Beaumont 1967, writ ref. n. r. e.); City of Corpus Christi v. Continental Bus Systems, Inc., 445 S.W.2d 12, 17 (Tex.Civ.App. Austin 1969, writ ref. n. r. e., in written opinion, Tex.Sup., 453 S.W.2d 470).

Typical of instances in which the courts have considered the problem of consistency between general laws enacted by the Legislature and provisions of home rule charters are the decisions in these cases: Allen v. City of Austin, 116 S.W.2d 468 (Tex.Civ. App. Austin 1938, writ ref.); State v. Self, 191 S.W.2d 756 (Tex.Civ.App. San Antonio 1945, no writ); City of Beaumont v. Fall, 116 Tex. 314, 291 S.W. 202 (1927); Xydias Amusement Co. v. City of Houston, 185 S.W. 415 (Tex.Civ.App. Galveston 1916, writ ref.); Temple Independent School District v. Proctor, 97 S.W.2d 1047 (Tex.Civ.App. Austin 1936, writ ref.); City of Lubbock v. South Plains Hardware Co., 111 S.W.2d 343 (Tex.Civ.App. Amarillo 1937, no writ); Prescott v. City of Borger, 158 S.W.2d 578 (Tex.Civ.App. Amarillo 1942, writ ref.).

Even if the Special Act which created the Authority could be termed a "general law," we find nothing in the Act to indicate with unmistakable clarity that the Legislature intended to withdraw from home rule cities the delegated power to fix utility rates within the limits of the cities. In fact, as already stated, the Act itself indicates clearly the contrary, by reason of the state's reservation of power to regulate whatever rates should be established by the governing board of the Authority. Provisions of the Act that rates as regulated would not impair the obligations of the Authority's bonds merely recognized the state's existing standards for fixing rates of utilities.

The parties have stipulated that the Authority "would not have been in default on any bonds had it not adopted the October 19, 1972, rate increases, nor would it have been in violation of any covenant of its bond indenture" which accompanied the stipulation. Appellant City of San Marcos agrees that "the covenant of the Legislature to respect the interests of the bondholders is as binding on San Marcos as it is on the LCRA, and if the City were to prescribe rates which would prejudice the interests of bondholders, they would be set aside in court at the instance of either the LCRA or the bondholders. Compliance with the covenant in Section 8 is a matter of the adequacy of rates, not a matter of jurisdiction." We agree with this statement.

## 411

The Lower Colorado River Authority was not removed from the rate making jurisdiction of the state, nor was it removed from the duly delegated power of a home rule city to fix utility rates within its corporate limits. We consider the rule of law on this issue to be the same rule applied by this Court in Trinity River Authority v. Texas Water Rights Commission, 481 S. W.2d 192, 194 (Tex.Civ.App. Austin 1972, writ ref. n. r. e.). In the Special Act creating and empowering the Trinity River Authority the Legislature reserved to the Board of Water Engineers, now the Texas Water Rights Commission, the power already delegated to that body to prescribe rates for sale of water. In the Special Act creating the Lower Colorado River Authority similar reservation was made to the state, and by clear implication to the cities having that power by prior delegation as to utilities serving their inhabitants, a power not withdrawn or limited by general law.

■ For additional reasons, the Special Act which gave birth to the Authority was not such a *general law* as would repeal or limit the charter powers of home rule cities in this state. It is true that the Act is not a "local" or "special" law within Article III, section 56, of the Constitution, prohibiting the Legislature from passing such laws with respect to enumerated subjects "except as otherwise provided in" the Constitution. Lower Colorado River Authority v. McCraw, 125 Tex. 268, 83 S.W.2d 629, 636 (1935).

■ But it does not follow that the Act is a "general law." The Act was passed pursuant to power derived by the Legislature under Article XVI, section 59, authorizing the creation of conservation and reclamation districts, one of the exceptions referred to in Article III, section 56. The Act establishes the home office of the corporation in Austin, and fixes its boundaries within the counties of Blanco, Burnet, Llano, Travis, Bastrop, Fayette, Colorado, Wharton, San Saba, and Matagorda. The

Authority is authorized by the Act to sell electric energy within or without the boundaries of the district. Article 8280-107 is a special law, made constitutional by Article XVI, section 59, of the Constitution, as an exception to the prohibition of Article III, section 56, against "local and special laws." See Hall v. Bell County, 138 S.W. 178 (Tex.Civ.App. Austin 1911, affirmed 105 Tex. 558, 153 S.W. 121); 10 Tex.L.R. 108. Despite its constitutional validity, Article 8280-107 is not a general law, but a Special Act. A special law does not fall within the provision of Article XI, section 5, of the Constitution requiring that home rule charters shall not contain any provision inconsistent with "the *general laws* enacted by the Legislature of this State." (Emphasis supplied)

The rule that a valid special law, one not within the prohibition of Article III, section 56, of the Constitution, creates an exception to the general law and is controlling if in conflict, has no application to conflict of a special law with home rule charters. (For rule, see Jefferson County v. Board of County & District Road Indebtedness, 143 Tex. 99, 182 S.W.2d 908 (1944); City of Piney Point Village v. Harris County, 479 S.W.2d 358, 365 (Tex. Civ.App. Houston 1st 1972, writ ref. n. r. e., cert. den. 410 U.S. 976, 93 S.Ct. 1503, 36 L.Ed.2d 173). We do not have before us, and therefore do not pass on, whether the Special Act creating the Authority would prevail over the general laws under which "general law" cities operate. (General Law Cities, Article XI, sec. 4, Constitution).

■ We do hold that the provisions of the Special Act do not prevail over the charter provisions of a home rule city if there is conflict between the Act and the charter. The Legislature may not pass any local or special law to amend, alter, or repeal provisions of an existing home rule charter or to grant a new charter. City of Fort Worth v. Bobbitt, 121 Tex. 14, 36 S. W.2d 470 (1931); State v. Vincent, 217 S. W. 402 (Tex.Civ.App. Amarillo 1919, af-

firmed 235 S.W. 1084, Tex.Comm.App. 1921, opinion adopted); Smith Bros. Inc. v. Lucas, 15 S.W.2d 27 (Tex.Civ.App. Dallas 1928, 26 S.W.2d 1055, Tex.Comm.App. 1930); Le Gois v. State, 80 Tex.Cr.R. 356, 190 S.W. 724. This rule has been stated clearly in the following language: ". . . the Legislature may regulate home rule cities in such manner as it sees fit, provided it does not do so by local or special laws." Dry v. Davidson, 115 S.W. 2d 689, 691 (Tex.Civ.App. Galveston 1938, writ ref.).

In view of our disposition of the principal issue of jurisdiction to fix utility rates within the city limits of San Marcos, we do not reach the several contentions of the parties urged under other issues, except as to validity or invalidity of actions by both parties in attempting to set new rates.

■ The trial court correctly adjudged that the rate ordinance passed by the city council of the City of San Marcos on December 19, 1972, was void for the reason that proper notice was not afforded the Lower Colorado River Authority in accordance with provisions of the city charter. The court also correctly adjudged that the rates set by the Lower Colorado River Authority on October 19, 1972, to apply in San Marcos, were void and of no effect; and that the rates thereafter set by the Authority on May 24, 1973, were void for failure of the governing board to give notice as required by the Texas Open Meeting Law (Article 6252–17, V.A.C.S.). The trial court also correctly denied the prayer of the City of San Marcos to enjoin the Authority from collecting rates in excess of the rates fixed by the void city ordinance of December 19, 1972.

The trial court erred in entering its declaratory judgment that the City of San Marcos had no power, jurisdiction, or authority to set rates for the sale of electricity by the Lower Colorado River Authority within the limits of the City of San Marcos. We reverse that judgment and render judgment that the City of San Marcos has

exclusive power, after notice and hearing, to regulate by ordinance the rates of the Lower Colorado River Authority operating in the corporate limits of the City, subject to review as provided by law.

Judgment of the trial court is affirmed in part and in part is reversed and rendered.