## CITY OF BAIRD v. WEST TEXAS UTILITIES CO.

### No. 2063.

Court of Civil Appeals of Texas. Eastland.

Nov. 22, 1940.

Rehearing Denied Dec. 20, 1940.

Scarborough, Yates & Scarborough, of Abilene, and L. L. Blackburn and F. E. Mitchell, both of Baird, for appellant.

Wagstaff, Harwell, Douthit & Alvis, of Abilene, for appellee.

FUNDERBURK, Justice.

The City of Baird, a municipal corporation, incorporated under general law, brought this suit against West Texas Utilities Company, a corporation, seeking the recovery of penalties in the aggregate sum of $44,700 claimed to be due under authority of the provisions of R.S.1925, Art. 1122. To the end that plaintiff's right to so recover be tested by means of a general demurrer, the parties agreed in writing as follows: "It is agreed between the parties hereto only for the purpose of the demurrers which are to be argued in this case before the trial, that the total gross revenues from that part of defendant's plant located at Baird, Callahan County, Texas, have in no years exceeded the sum of $36,000.00. It is further agreed, solely on the question of the demurrers to be argued, that West Texas Utilities Company is a corporation duly incorporated under the laws of the State of Texas, Article 1435, passed by the Legislature in 1911, and that West Texas Utilities Company is an integrated single plant owning electrical properties and operating in some 160 towns in the State of Texas, said towns all being connected by high-lines, and that its electricity and power is generated in Taylor, Tom Green and Hardeman Counties, Texas, and is distributed over high-lines connecting the various and sundry plants, including its electrical properties in the town of Baird, and that it has more than 2,000 miles of high-lines, and that its general office is in the city of Abilene, Texas, and its general books are kept in the city of Abilene, Taylor County, Texas, and that the city of Baird, is supplied with electricity over high-line running from the town of Abilene to Cisco, Texas, and connected with its other high-lines at said two points."

Treating the facts thus stipulated the same as allegations of plaintiff's petition, the court sustained a general demurrer to said pleading. Plaintiff having refused to amend, the court dismissed the case. From the judgment of dismissal plaintiff has appealed.

Appellant, the plaintiff below, will be referred to as the City, and appellee, the defendant below, as the Utilities Company.

A number of more or less interesting, as well as difficult, questions are presented which, by reason of our conclusion upon two other questions, it becomes unnecessary for us to decide. Our judgment is rested upon the conclusions reached upon the two questions hereinafter discussed.

The first question may broadly be stated thus: Since R.S.1925, Art. 1121, requiring certain reports, and Art. 1122, imposing penalties for willful failure or refusal to make such reports, were enacted in 1907, and since at that time corporations with powers like appellee did not exist, that having been subsequently (in 1911) authorized by R.S.1925, Art. 1435, was the Utilities Company under duty to make such reports and therefore subject to the penalties provided in said Art. 1122 for willful failure or·refusal to do so?

The second question is whether even if the proper interpretation of said arts. 1121 and 1122 includes appellee within their provisions, do the facts treated as true by the general demurrer to plaintiff's petition show that the Utilities Company willfully failed or refused to make such reports?

These questions will be considered in the order stated.

It appears that R.S.1925, Art. 1119, after having been held by the Supreme Court in Texas-Louisiana Power Co. v. City of Farmersville, 67 S.W.2d 235, to be unconstitutional and void, was purportedly amended by Acts 1937, 45th Legislature, p. 274, ch. 144, sec. 1, Vernon's Ann.Civ.St. Art. 1119. Said Art. 1119, as well as Arts. 1121 and 1122, originated in an Act approved April 16, 1907 (Acts 1907, 30th Legislature, p. 217, secs. 1, 4, and 5). Said original Act (as do subsequent modifications of it) applied to (unincorporated) companies, corporations and persons. Said companies, corporations and persons were described or identified by the statute as (those) "using the streets and public grounds of said city or town, and engaged in furnishing water, gas, light or sewerage service to the public." It will be seen that the said Act did not expressly identify the companies, corporations and persons subject to its provisions as only those whose physical properties, plant or enterprise in which engaged, was located in a single city or town. But looking to all provisions of the Act, together with other relevant statutes, we think that such was implied. A few of the reasons for this view will be mentioned.

A limitation upon the power granted, namely, that "the City Council or Board of Aldermen shall not prescribe any rate or compensation which will yield less than ten (10%) per cent per annum net on the *actual cost of the physical properties, equipments and betterments*" (italics ours) must,

in reason, have referred to properties, equipments and betterments constituting a plant, the operation of which was a single "enterprise" conducted in a particular city or town. The power granted in section 3, Vernon's Ann.Civ.St. art. 1120, "to prevent any interference with their property" must refer to property constituting part of the one "plant" and used in one "enterprise." Item (a) of the required report (sec. 4) was "The amount of any lien or mortgage upon the properties composing such *plant*". (Italics ours.) Item (b) was "all other indebtedness pertaining to such *enterprise* and the consideration therefor". (Italics ours.) Here undoubtedly is a clear identification of properties composing a plant, and of the plant as used in an enterprise, the nature of which in the case of an electric light company, for example, was "furnishing * * * light * * * to the public" the rate for which the city council for any city or town of over 2,000 inhabitants incorporated under general law was empowered to prescribe and regulate, operative, of course, only in each such particular city or town.

Further, item (c) calling for "cost of the visible physical properties" etc.; item (d) calling for "annual cost of operating such plant" etc., and item (e) for "gross earnings from any such plant" all concur, it would seem, to strengthen, if not imperatively require, the conclusion that "the physical properties", "equipments", "betterments", "plant", all related to a single enterprise conducted with reference to the particular city or town empowered by said act to regulate rates.

At the time of the passage of said Act, the Revised Statutes of 1895 (except, of course, in cases of subsequent modifications) were in effect. Article 642 provided thus: "The purposes for which private corporations may be formed are * * * 12. The supply of water to the public. 13. The manufacture and supply of gas, and the supply of light, heat, and electric motor power, or either of them, to the public by any means. * * * 20. The construction and maintenance of sewers. * * * 23. The construction, maintenance and operation of dams, reservoirs, lakes, wells, canals, flumes, laterals, and other necessary appurtenances for purposes of * * * city water works. * * *"

Then, as now, the charter of each corporation was required, among other things, to state "the place or places where its business is to be transacted." R.S.1895, Art. 643. Also, then as now, it was provided "no corporation * * * shall employ its stock, means, assets or other property, directly or indirectly, for any other purpose whatever than to accomplish the legitimate objects of its creation." R.S. 1895, Art. 665 (R.S.1925, Art. 1349). It was undoubtedly implicit in the provisions of R.S.1895, Arts. 705 and 706, that the powers of a gas, water or light corporation were to exist and be exercised in reference to a single city or town. Consider, for example, the power to "manufacture and sell and to furnish such quantities of water or gas as may be required by the city, town or village *where located*." (Italics ours.) Consider, also, the reserved privilege of a city or town *"in which any gas light or water corporation shall exist"* (italics ours), to make certain connections with such corporations. Under R.S.1895 the power of eminent domain given an incorporated city or town was that prescribed by Art. 548. In the same Article such power was also given to water companies and corporations. It is to be noted that the power of eminent domain was not granted to sewer companies or corporations until the Act of 1899, p. 263 (R.S. 1925, Art. 1439). Apparently such power was not granted to a light or power company or corporation until the Act of 1911, p. 228 (R.S.1925, Arts. 1435, 1436). The latter Act itself shows by granting the power a legislative construction of the law that at that time such power did not exist. Said Act of 1911 authorized the corporations subject to its provisions to own and mortgage properties which theretofore no corporation was authorized to own or mortgage. They were thereby authorized to create debts of a character which no corporation theretofore had authority to incur. Upon the whole, it seems to us that the reports which were required by said Act of 1911 to be made by a corporation to which the statute was then applicable (R.S. 1925, Arts. 1121 and 1122) cannot be made by a corporation like the Utilities Company, having and exercising the powers granted by said Act of 1911 (R.S.1925, Art. 1435) with like or even similar relevancy to the reason or purpose of such reports. Upon the material question of what would be a fair and just rate of charges or compensation to be received for furnishing public utility services in a particular city or town, there would manifestly be a vast difference,

to say the least, regarding the utility of information as to the amount of a mortgage upon the total properties of one plant devoted exclusively to the enterprise of furnishing such services, and upon the total properties of a plant only a small, and in many cases an insignificant, part of which was devoted to the furnishing of such services. The same would be equally true as to information regarding the amount of other indebtedness of such a plant; the visible physical properties composing such plants; the cost of operating same, and the gross earnings thereof. Such information useful and necessary in the one case would be wholly useless in the other, or if not wholly useless, only partially so, requiring some character of apportionment, involving in effect a change in the identity of the subject matter of the reports. The language of the statute, it is believed, will not reasonably lend itself to such a construction.

■ We think the conclusion a reasonable one that when in 1911 a character of public utilities corporations was authorized, of such nature that the reports required by said Art. 1121 if made by them, would not serve the intended purpose, the proper construction of the law should be that it applies only to persons, companies and corporations of the same character as were in existence at the date of the passage of the Act. The reason supporting this view may, without further amplification, be said to be that which rules the decision in the Railroad Commission of Texas v. Texas & N. O. Ry. Co., Tex.Civ.App., 42 S.W.2d 1091, and authorities therein cited.

■ Independently of the first question above discussed, we think there can be no reasonable doubt that even if appellee should be held to be subject to the requirements of said Arts. 1121 and 1122, the facts admitted by the demurrer show no willful failure or refusal on the part of the Utilities Company to make the reports. The Utilities Company was in no event subject to the penalties provided in Art. 1122, unless it *"willfully* failed or refused to make such reports." The word "willful" is in different connections used in different senses. Here, it is used in a penal statute— a statute imposing a penalty. So used, it has an "accepted, a restricted or well defined meaning." 68 C.J. p. 290, sec. 4. "It is universally held," says our Supreme Court, in State v. Alcorn, 78 Tex. 387, 393, 14 S.W. 663, 664, "that the word 'willful,' when used in a penal statute, means with evil intent, or without reasonable ground to believe the act lawful." Other statements of the definition include: "A deliberate intention or set purpose to omit to perform a required duty; deliberate purpose to accomplish something forbidden * * * a determination to execute one's own will in spite and defiance of the law; a purpose to do wrong * * * an evil intent without justifiable excuse * * * knowledge and a purpose to do a wrong act. It includes the idea of an act intentionally done * * * with knowledge it is unlawful." 68 C.J. p. 290, sec. 4.

■ The entire discussion of the first question above considered, if not conclusive of the correctness of our holding upon that point, does certainly at least demonstrate that the failure or refusal of appellee to make the reports was entirely consistent with a good faith belief that the law does not impose a duty to make same. Thus, it is clearly established, we think that the failure of the Utilities Company to do so was not willful; and hence said penalty provision was by its own terms not applicable.

It is, therefore, our conclusion that the judgment of the court below should be affirmed, and it is accordingly so ordered.