OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

December 30, 1999

The Honorable Tony Garza
Chair, Railroad Commission of Texas
P.O. Box 12967
Austin, Texas 78711-2967

Opinion No. JC-0164

Re: Whether the Railroad Commission's regulatory definition of "unacceptable unsafe location" is inconsistent with the Texas Aggregate Quarry and Pit Act, chapter 133 of the Natural Resources Code, to the extent the rule includes any pit within 200 feet of a roadway edge, and related question   (RQ-0072-JC)

Dear Mr. Garza:

Under the Texas Aggregate Quarry and Pit Safety Act (the "Act"), chapter 133 of the Natural Resources Code, *see* TEX. NAT. RES. CODE ANN. § 133.001 (Vernon 1993) (titling Act), the Railroad Commission of Texas (the "Commission") may require a person responsible for an abandoned or inactive pit to erect a safety barrier between a public road and the pit if the pit is located in an "unacceptable unsafe location." The term "unacceptable unsafe location" is defined both in the Act, *see id.* § 133.003(27) (Vernon Supp. 2000), and in Commission regulations, *see* 16 TEX. ADMIN. CODE § 11.1004 (1999) (Commission Quarry & Pit Safety). You ask, in essence, whether the regulatory definition is consistent with the Act. *See* Letter from Honorable Tony Garza, Chairman, Railroad Commission of Texas, to Honorable John Cornyn, Attorney General of Texas (May 31, 1999) (on file with Opinion Committee) [hereinafter "Request Letter"]. We conclude that the Act's definition of "unacceptable unsafe location" is ambiguous, that the Commission's rule reasonably construes the statute, and that the rule consequently is within the Commission's authority.

You also ask whether the Act applies only to "pits associated with the commercial extraction of aggregates" or whether it includes "pits used on a one-time or short[-]duration basis." Request Letter, *supra*, at 1. We conclude that the Act's application does not depend upon the duration of aggregate production nor upon whether aggregates were extracted for commercial or noncommercial purposes per se. Rather, with respect to inactive quarries or pits, the Act applies only to those that are or have been situated adjacent to a plant.

A person responsible for a pit, *i.e.*, an operator or an owner, *see* TEX. NAT. RES. CODE ANN. § 133.021(a) (Vernon 1993) (defining "person responsible for a quarry or pit"), must comply with the Act's safety-barrier requirements. *See id.* § 133.041(a), (b) (Vernon Supp. 2000); *see also id.* § 133.021 (Vernon 1993) (setting forth identity of "person responsible for a quarry or pit"). For purposes of the Act, a "pit" is "an open excavation not less than five feet below the adjacent and natural ground level from which aggregates have been or are being extracted." *Id.* § 133.003(17) (Vernon Supp. 2000); *see also id.* § 133.003(20) (defining "quarry"). The term "'aggregates'

includes any commonly recognized construction material originating from a quarry or pit by the disturbance of the surface," such as "dirt, soil, rock asphalt, clay, granite, gravel, gypsum, marble, sand, shale, stone, caliche, limestone, dolomite, rock, riprap, or other nonmineral substance." *Id.* § 133.003(2).

Whether a responsible person must construct a safety barrier depends in part upon whether the pit in question is "active" or "abandoned or inactive." *See id.* § 133.041(a), (b). A person responsible for an active pit must construct a safety barrier between the pit and the road if the edge of the pit is "in hazardous proximity to the public road," *id.* § 133.041(a); *see also id.* § 133.003(26) (defining "site"), *i.e.*, within 200 feet of "the nearest roadway edge of a public road or highway." *Id.* § 133.003(13). By contrast, the Commission may require a person responsible for an abandoned or inactive pit to construct a safety barrier between the public road and the pit only if the pit is (1) in hazardous proximity to a public road and (2) "*in an unacceptable unsafe location.*" *Id.* § 133.041(b) (emphasis added); *see also id.* § 133.041(b)(1), (2) (listing conditions to waive barrier requirement). The Act defines an "unacceptable unsafe location" as:

> a condition where the edge of a pit is located within 200 feet of a public roadway intersection in a manner which, in the judgment of the commission:
>
> (A) presents a significant risk of harm to public motorists by reason of the proximity of the pit to the roadway intersection; and
>
> (B) has no naturally occurring or artificially constructed barrier or berm between the road and pit that would likely prevent a motor vehicle from accidentally entering the pit as the result of a motor vehicle collision at or near the intersection; or which,
>
> (C) in the opinion of the commission, is also at any other location constituting a substantial dangerous risk to the driving public, which condition can be rectified by the placement of berms, barriers, guardrails, or other devices as prescribed by this code.

*Id.* § 133.003(27); *see also id.* § 133.003(18), (24) (defining "public road or right-of-way" and "roadway").

A person responsible for an inactive pit that is in hazardous proximity to a public road and that is in an unacceptable, unsafe location may be fined for failing to erect an appropriate barrier. The amount of the civil penalty depends upon whether the violation is a first offense or a repeat offense:

> (a) A person or responsible party who violates this chapter or a rule or order adopted under this chapter after due notice is liable to

the state for a civil penalty of not less than $500 or more than $5,000 for each act of violation on a first offense.

(b) A person or responsible party who violates this chapter or a rule or order adopted under this chapter after due notice is liable to the state for a civil penalty of not less than $1,000 or more than $10,000 for each act of violation on a second and subsequent offense.

*Id.* § 133.082 (Vernon 1993).

The Commission may adopt rules and regulations that comport with the Act. *See id.* § 133.011(1); *see also Railroad Comm'n v. Lone Star Gas, a Div. of Enserch Corp.*, 844 S.W.2d 679, 685 (Tex. 1992) (quoting *State Bd. of Ins. v. Deffebach*, 631 S.W.2d 794, 798 (Tex. App.–Austin 1982, writ ref'd n.r.e.)) (stating that administrative agency may adopt only such rules as are authorized by and consistent with agency's statutory authority); Tex. Att'y Gen. Op. No. JC-0072 (1999) at 4-5 (same). The Commission has adopted a rule concluding, as a matter of law, that every inactive pit edging within 200 feet of a public road, regardless of the pit's proximity to an intersection, is a substantial dangerous risk to the driving public:

Unacceptable unsafe location—A condition where the edge of a pit is located within 200 feet of a public roadway intersection in a manner which, in the judgment of the commission:

(A) presents a significant risk of harm to public motorists by reason of the proximity of the pit to the roadway intersection; and

(B) has no naturally occurring or artificially constructed barrier or berm between the road and pit that would likely prevent a motor vehicle from accidentally entering the pit as the result of a motor vehicle collision at or near the intersection; or which,

(C) in the opinion of the commission, is also at any other location constituting a substantial dangerous risk to the driving public, which condition can be rectified by the placement of berms, barriers, guardrails, or other devices as prescribed by these regulations. *It is the commission's opinion that any abandoned pit which has an edge within 200 feet of a roadway edge of a public road constitutes a substantial dangerous risk to the driving public.* Other locations will be decided on a case-by-case basis.

16 TEX. ADMIN. CODE § 11.1004 (1999) (Commission Quarry & Pit Safety) (emphasis added).

You ask first whether the Commission acted beyond its statutory authority by adopting a rule defining the term "unacceptable unsafe location" to encompass every inactive pit "within 200 feet of a public road without regard to [the pit's] distance to a roadway intersection." *See* Request Letter, *supra*, at 1. Your question assumes that every pit that constitutes a substantial dangerous risk to the driving public is in an unacceptable, unsafe location under the rule, regardless of whether the risk may be "rectified by the placement of berms, barriers, guardrails, or other devices." *See* 16 TEX. ADMIN. CODE § 11.1004(C) (1999) (Commission Quarry & Pit Safety). Under subsection (C) of the rule, however, it appears that an inactive pit is in an unacceptable, unsafe location only if the pit's location constitutes a "substantial dangerous risk" *and* if the risk "can be rectified" by the construction of a safety barrier. *See id.* Thus, the rule appears to encompass not every inactive pit within a certain distance of a public roadway, as you suggest, but only those located within that distance that can be made safe by the placement of safety barriers.

Section 133.003(27), defining the term "unacceptable unsafe location," may be construed in two ways. Neither construction, however, resolves all questions about the continued vitality of related provisions.

First, the subsection may be read so that the options ("A+B" and "C") diverge at the word "which":

> "Unacceptable unsafe location" means a condition where the edge of a pit is located within 200 feet of a public roadway intersection in a manner (A+B) *which* in the Commission's judgment, presents a significant risk of harm to public motorists and has no sufficient naturally occurring or artificially constructed barrier or berm between the road and the pit; or (C) *which,* in the Commission's opinion, is at a location that constitutes a substantial dangerous risk to the driving public, which condition can be rectified by the placement of berms, barriers, guardrails, or other devices.

Under this construction, the Commission may require a person responsible for an inactive pit to construct a barrier only if the edge of the pit is located within 200 feet of a public roadway intersection. But if all sites must be within 200 feet of a public roadway intersection, then subsection (C) essentially duplicates subsections (A) and (B) and is meaningless. Subsection (C) of the Commission's rule, title 16, section 11.1004 of the Texas Administrative Code, is inconsistent with this alternative to the extent it encompasses inactive pits, the edges of which are located within 200 feet of the edges of public roads but beyond 200 feet of public intersections.

In the alternative, the statutory definition may be read so that the options diverge at the word "located" or "location":

> "Unacceptable unsafe location" means a condition where the edge of a pit is (A+B) *located* within 200 feet of a public roadway intersection and which, in the Commission's judgment, presents a significant risk of harm to public motorists and has no sufficient naturally occurring or artificially constructed barrier or berm

> between the road and the pit; or (C) in the opinion of the Commission, *at a location* that constitutes a substantial risk to the driving public, which condition can be rectified by the construction of berms, barriers, guardrails, or other devices.

Under this construction, the Commission might require a person responsible for an inactive pit, the edge of which is located more than 200 feet from a public roadway intersection (although within 200 feet of the edge of a public roadway), to construct barriers. Subsection (C) of the Commission's rule comports with this alternative construction of the statute. The Commission's interpretation, manifest in its rule, however, renders the phrase "unacceptable unsafe location" nearly the equivalent of the statutory definition of "hazardous proximity to a public road," *see* TEX. NAT. RES. CODE ANN. § 133.003 (13), (27) (Vernon Supp. 2000); *see also id.* § 133.041(a) (stating standard for active pits).

The legislative history does not clearly indicate which construction the legislature intended. Where the language of a statute is ambiguous, we may consider the statute's legislative history. *See Boykin v. State*, 818 S.W.2d 782, 785-86 (Tex. Crim. App. 1991) (en banc); *see also* TEX. GOV'T CODE ANN. § 311.023(3) (Vernon 1998). For the purposes of this opinion, the Act's definition of "unacceptable unsafe location" was adopted in 1991. *See* Act of May 26, 1991, 72d Leg., R.S., ch. 668, § 1, sec. 133.003(26), 1991 Tex. Gen. Laws 2426, 2428. (The definition was renumbered and slightly amended in 1993, *see* Act of May 30, 1993, 73d Leg., R.S., ch. 693, § 1, sec. 133.003(27), 1993 Tex. Gen. Laws 2727, 2727-28, but that amendment is not germane to the issue we are considering here.) The Senate adopted the current definition of the term "unacceptable unsafe location" when the bill was read for the second time on the Senate floor. *See* S.J. OF TEX., 72d Leg., R.S. 2418 (1991); *Texas Aggregate Quarry & Pit Safety Act, Debate on Tex. Comm. Substitute H.B. 451 on the Floor of the Senate*, 72d Leg., R.S. (May 25, 1991) (statement of Senator Sims) (tape available from Texas State Library & Archives Commission). Although little was said about the definition on the Senate floor, it was discussed during a meeting of the Senate Committee on Natural Resources. *See generally Texas Aggregate Quarry & Pit Safety Act: Hearings on Tex. H.B. 451 Before the Senate Comm. on Nat. Res.*, 72d Leg., R.S. (May 22, 1991) (tape available from Texas State Library & Archives Commission). Committee members agreed that the definition was unclear and recommended that its application be clarified before it reached the Senate floor, *see id.* (statements of Senator Sims and unidentified committee member), but it does not appear that any changes were made. *Compare* Act of May 26, 1991, 72d Leg., R.S., ch. 668, § 1, sec. 133.003(26), 1991 Tex. Gen. Laws 2426, 2428 (defining "unacceptable unsafe location" in enacted bill) *with* Tex. Comm. Substitute H.B. 451, 72d Leg., R.S. (1991) (defining "unacceptable unsafe location" in introduced bill); Tex. H.B. 1855, 72d Leg., R.S. (1991) (defining "unacceptable unsafe location").

Because the legislative history of section 133.003(27) of the Natural Resources Code does not point clearly to one construction over another, a court would consider whether the Commission's regulatory interpretation of the statute "'is based on a permissible construction of the statute.'" *Regions Hosp. v. Shalala*, 522 U.S. 448, 457 (1998) (citation omitted); *see* TEX. GOV'T CODE ANN. § 311.023(6) (Vernon 1998) (permitting court to consider administrative construction of statute); *Boykin*, 818 S.W.2d at 785-86 (permitting court to consider administrative construction of ambiguous statute). A court would accept the Commission's construction if the regulation reasonably construes the statute and does not contradict the statute's plain language. *See Tarrant*

*Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993) (stating that construction of statute by agency charged with its execution is entitled to serious consideration so long as construction is reasonable and does not contradict statute's plain language); *Rylander v. B. & A. Mktg. ex rel. Atlantic Richfield Co.*, 997 S.W.2d 326, 331 (Tex. App.–Austin 1999, no pet.) (same); *Simplex Elec. Corp. v. Holcomb*, 949 S.W.2d 446, 447 (Tex. App.–Austin 1997, pet. denied) (same); *City of Plano v. Public Util. Comm'n*, 953 S.W.2d 416, 421 (Tex. App.–Austin 1997, no writ) (same).

We conclude that the Commission's definition of "unacceptable unsafe location," in particular section 11.1004(C) of title 16, Texas Administrative Code, reasonably construes the Act's definition of the same term and that the regulation is consistent with the Act. As we have indicated, the regulation accords with one of two possible, reasonable readings of the Act's definition of the same term. *See supra* pp. 4-5 (explaining two possible constructions of section 133.003(27) of Natural Resources Code). Thus, title 16, section 11.1004(C) of the Texas Administrative Code is within the Commission's authority and is valid.

Our conclusion comports with the principle of statutory construction that penal statutes must be strictly construed. To the extent the Act imposes penalties upon certain proscribed behaviors, such as the penalties that may be levied upon responsible persons who fail to comply with the statutory safety-barrier requirements, it must be strictly construed so that those who are susceptible of violating the Act have notice of the prohibited behaviors. *See State v. Duke*, 137 S.W. 654, 662 (Tex. 1911) (stating that to extent statute is penal, it must sufficiently notify potential wrongdoers of nature of illegal behavior); *City of Baird v. West Tex. Utils. Co.*, 145 S.W.2d 965, 968 (Tex. Civ. App.–Eastland 1940), *writ dism'd*, 148 S.W.2d 392 (Tex. 1941) (per curiam). Section 133.003(27)(C) of the Natural Resources Code plainly notifies persons responsible for inactive pits that, although their pits may not be located within 200 feet of an intersection, they may still be subject to regulation under the Act if "in the opinion of the commission" the pits constitute substantial driving risks and the risks can be abrogated by the construction of safety barriers. TEX. NAT. RES. CODE ANN. § 133.003(27)(C) (Vernon Supp. 2000) (defining "unacceptable unsafe location"). A person responsible for an inactive pit is thus on notice that he or she must review the Commission's rules for further description of pits that are in unacceptable, unsafe locations and that may, therefore, be subject to the Act's safety-barrier requirement. Indeed, we can surmise that notice is satisfied only by the adoption of rules defining the Commission's opinion on what is otherwise an unacceptable, unsafe location. Adequate notice of proscribed conduct would appear to be lacking if such judgments were made on a case-by-case basis. For this reason, although you do not ask about it, the last sentence of subsection (C) of the rule, "Other locations will be decided on a case-by-case basis," 16 TEX. ADMIN. CODE § 11.1004 (1999) (Commission Quarry & Pit Safety Act), is invalid.

You next ask whether the Act applies only to pits associated with commercial extraction of aggregates for use as building materials or on-site processing, or whether it may also apply to pits used on a one-time or short-duration basis. *See* Request Letter, *supra*, at 1. Your question suggests that the Act distinguishes between excavations on the basis of the length of time they were used for the extraction of aggregates or on the basis of whether aggregates were or are being extracted for commercial or noncommercial purposes. Duration of usage and the purpose of the extraction are distinct considerations, and we consider them separately.

We first conclude that the Act applies to inactive pits regardless of the number of times the pit has been used or duration of the previous usage. Nothing in the Act limits the set of inactive pits to which it applies based upon the number of times a pit was used for aggregate production or the duration of the pit's previous use for aggregate production.

We next conclude that the Act does not distinguish between inactive pits on the basis of whether aggregate was produced for commercial or noncommercial purposes. While you do not explain what you mean by the use of the term "commercial," we see no reference in the Act to "commercial" or "noncommercial" aggregate production.

We believe, however, that the Act applies only to an inactive quarry or pit that is a "site" for the purposes of the Act. The Act defines "inactive quarry or pit" as "a site or any portion of a site that although previously in aggregate production is not currently being quarried by any ownership, lease, joint venturer, or some other legal arrangement." TEX. NAT. RES. CODE ANN. § 133.003(12) (Vernon Supp. 2000); *see also id.* § 133.003(1) (defining "abandoned"). A "site" is "the tract of land on which is located a pit and *includes the immediate area on which the plant used in the extraction of aggregates is located.*" *Id.* § 133.003(26) (emphasis added).

Because the Act defines "inactive quarry or pits" to incorporate only "sites" and defines the term "site" to include only those locations with a "plant used in the extraction of aggregates," the Act applies only to those inactive pits located near and associated with a plant. While the Act does not define the term "plant," *see id.* § 133.003, its common usage implies an industrial process. *See* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 1998) (directing us to construe statutory words and phrases "according to the rules of grammar and common usage"); XI OXFORD ENGLISH DICTIONARY 972 (2d ed. 1989) (defining "plant" as "[t]he fixtures, implements, machinery, and apparatus used in carrying on any industrial process; the premises and fixtures of a business . . . ."). Accordingly, the Commission may not regulate an inactive pit that is located on a tract without a plant.

## S U M M A R Y

Title 16, section 11.1004(C) of the Texas Administrative Code, which defines the term "unacceptable unsafe location" for purposes of the Texas Aggregate Quarry & Pit Safety Act, chapter 133 of the Natural Resources Code, reasonably construes the Act to state that an inactive pit, the edge of which is located within 200 feet of the edge of a public roadway but beyond 200 feet from a public road intersection, constitutes a substantial dangerous risk to the driving public. Consequently, where the substantial dangerous risk may be "rectified" by the construction of safety barriers, the Commission may determine as a matter of law that such inactive pits are in an unacceptable, unsafe location.

With respect to inactive quarries and pits, the Act applies only to sites that include an industrial aggregate extraction plant.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General - Opinion Committee